In the Matter of the Application of MARY DROSNES, Appellant, a Stockholder in the FILM AMUSEMENT COMPANY, INC., for the Appointment of Three Persons to Appraise the Value of Her Stock.

FILM AMUSEMENT COMPANY, INC., Respondent.

First Department, April 17, 1919.

Corporations — validity of sale of corporate property without procuring consent at stockholders' meeting as required by section 16 of Stock Corporation Law — sale not ultra vires — estoppel — right of minority stockholder under section 17 of Stock Corporation Law to appointment of appraisers to value her stock — said stockholder not bound to institute action to set aside sale.

Where a corporation was organized for the express purpose of owning, operating and conducting a theatre or place of amusement and two stockholders and directors owning two-thirds of the stock voted at a directors' meeting, over the objection and protest of the owner of the remaining third, to dispose of the only property of the corporation which enabled it to conduct the theatre and thereby transformed its business into that of a mere landlord as lessor of stores and theatres, the sale was not *ultra vires* and void because the consent was not obtained at a stockholders' meeting as required by section 16 of the Stock Corporation Law, but

was merely voidable, and the consenting stockholders who, although in control of the corporation, failed to call a stockholders' meeting, are estopped from pleading *ultra vires* upon a petition by the remaining stockholder for the appointment of persons to appraise the value of her stock as provided in section 17 of the Stock Corporation Law.

Moreover, said petitioner merely because she has a right to institute an action to set aside the sale may not be compelled to resort to that remedy. She may elect to waive the stockholders' meeting and notice and to adopt and stand on the sale.

PAGE and MERRELL, JJ., dissented, with opinion.

APPEAL by the petitioner, Mary Drosnes, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 29th day of June, 1916, denying her application for the appointment of three persons to appraise the value of her stock in the respondent, and to direct the manner in which payment for said stock should be made as provided in section 17 of the Stock Corporation Law (Consol. Laws, chap. 59; Laws of 1909, chap. 61).

*Alexander A. Mayper* of counsel [*Isidor Bayer* with him on the brief; *Mayper & Boochever*, attorneys], for the appellant.

*Lawrence I. Gerber*, for the respondent.

SHEARN, J.:

The Film Amusement Company, Inc., was incorporated under the laws of the State of New York on January 25, 1913, and the purposes of the corporation as stated in the certificate are: " To own, operate and conduct and manage a theatre or place of amusement; to own, manage, conduct or operate theatrical performances; to do a general theatrical business, either as principal, factor, agent or otherwise." The capital stock of the corporation was $3,000 and was divided into thirty shares of the par value of $100 each. The petitioner owned ten shares and Nathan Doniger and Jacob Herskowitz each owned ten shares. The corporation since its organization operated a motion picture theatre called the Joyland Theatre at 2078–2080 Third avenue, borough of Manhattan, city of New York. In March, 1914, the company decided to rebuild the theatre and thereupon

entered into a contract with the owner of the premises whereby the owner leased to the company the premises 2072–2080 Third avenue for a period of ten years at a rental of $5,000 plus taxes, assessments, water rates and insurance, with permission to the company to make alterations and rebuild the theatre. This the corporation did and the theatre as altered was completed in September, 1914. The premises as altered contained the theatre and three stores and the stores were rented out by the company. The petitioner's husband, who had represented the petitioner since the incorporation of the company, was made manager of the theatre. More than a year later, differences arose between petitioner's husband and Doniger and Herskowitz, the majority stockholders, regarding the management of the theatre. Doniger and Herskowitz thereupon proceeded to sell the company's interest in the theatre and the petitioner objected and formally protested. In spite of the petitioner's protests, a meeting of the directors was called to be held on the 20th day of November, 1915, " For the purpose of considering the sale of the chattels and things owned by the company at the Joyland Theatre at 2078–2080 Third Avenue, in the Borough of Manhattan, City of New York, for the price of $4,500, payable $4,000 in cash and $500 in five promissory negotiable notes for $100 each, payable monthly beginning December 22, 1915, and also to lease the theatre building exclusive of the store therein at a rental of $500 per month; the tenant to pay the insurance premiums on the theatre building." The meeting was held and a motion was made to make the sale as set forth in the notice of meeting. Doniger and Herskowitz, the majority stockholders, voted in favor of the motion, and the petitioner's husband and duly authorized representative voted against the same. The motion was thereby carried and on the 22d day of November, 1915, the sale and transfer was actually made to the G. & G. Amusement Corporation, a company engaged in a business similar to that of the Film Amusement Company, Inc. At the time the transfer was made the company delivered to the purchaser a certificate stating that Doniger and Herskowitz owned two-thirds of the capital stock of the company.

Opposing the application of the non-assenting stockholder to have her stock appraised and purchased under the statute,

the respondent first contends that the sale was not such as to entitle the petitioner to the statutory relief.

The respondent says: " The company owned the same property as before November 20, 1915, all that had been done was to change the method of deriving its income from this property." This is not correct because before November 20, 1915, the corporation owned all the personal property making up the equipment of the theatre and this was sold. While it is true that both before and after November 20, 1915, the corporation owned the lease, it is to be noted that it sold the theatre that it had erected upon the property. Before the transaction it owned a ground lease, the full equipment of a theatre and so long as the lease lasted it owned a theatre constructed by it on the premises. After the transaction it had no theatre and no equipment.

This corporation was not organized for the purpose of building and selling theatres or for the purpose of erecting buildings for the purpose of leasing same. Its purpose was to own, operate and conduct a theatre or place of amusement. This sale and transfer stripped the corporation of the only property it had which would enable it to carry out the purpose for which it was created, and the sale produced no money which could be used as capital to procure another theatre and carry on the business for which it was organized. This sale, to my mind, is one which clearly entitles the petitioner to the statutory relief, and is embraced in the category of cases described in *Matter of Timmis* (200 N. Y. 177, 181) as being the occasion for the enactment of the statute. In that case Judge VANN, after citing a number of cases, said:

" These cases and those which intervened established the law that a corporation cannot sell all its property, or even a part thereof so integral as to be essential for the transaction or its ordinary business, because such a sale is wholly or partly an act of self-destruction and a practical dissolution without compliance with law.

" The discussion of the subject in the various opinions suggested two evils: (1) The injustice to the bulk of the stockholders from want of power in a corporation to sell its business or an essential part thereof to another corporation organized for the purpose, frequently from its own membership,

on terms deemed advantageous by the holders of a large majority of the stock. (2) The injustice to minority stockholders of requiring them to abandon, change or limit their business if the majority should have the power to direct such a sale. An incidental evil was the power of a dissenting stockholder to compel the majority to buy him out on his own terms in order to secure unanimous consent with no one left to question the transaction."

It is an obvious injustice to one who has invested in a third of the capital stock of a corporation, organized for the express purpose of operating a theatre or place of amusement, to have the majority stockholders dispose of the only property it has which enables it to conduct a theatre and transform its business into that of a mere landlord or lessor of stores and theatres. In the one case there is the prospect and opportunity of large profits, growing out of the chance of acquiring plays that develop into great popular successes, while in the other the profits are absolutely limited to rents. So far as concerns the business for which this corporation was organized to perform, after thus stripping itself of its assets it might as well have dissolved. But it is not proposed to dissolve it, but to hold the minority stockholders to their interest in the corporation and to such dividends as may be distributable from rentals. While the Stock Corporation Law permits a corporation upon the consent of two-thirds of its stockholders to dispose of a substantial part of its assets or even of all its assets, when it does so against the protest of the minority it must comply with the conditions prescribed by the statute and buy the minority stock at its appraised value. (See Consol. Laws, chap. 59 [Laws of 1909, chap. 61], §§ 16, 17.)

It is next contended by the respondent that, even if the sale was one that required the consent of two-thirds of the stockholders, the sale was *ultra vires* and void because the consent was not obtained at a stockholders' meeting. This contention is advanced in face of the fact that, although the meeting was called a directors' meeting, those who constituted the board either owned or represented every share of stock. Doniger and Herskowitz, two of the directors, owned two-thirds of the stock, and the third director was the husband of the

petitioner, who owned the balance of the stock, and who had given her husband a power of attorney to represent her. So that while technically the meeting was that of the board of directors, those who met and acted were all stockholders or representatives of stockholders. But because the meeting of the stockholders was called a directors' meeting, it is now claimed by those who put the transaction through that the sale, if governed by section 16 of the Stock Corporation Law, is void. The respondent is estopped from advancing this contention.

The sale, at most, was merely voidable. It was neither *malum in se* nor *malum prohibitum*. The statute authorized a sale upon the consent of two-thirds of the stockholders. Such consent was given. As a matter of procedure, the consent was required to be obtained at a stockholders' meeting called upon a specified notice. The object of this requirement is to give notice to dissenting stockholders, so that they will be in a position to protect their rights and apply for an appraisal of their stock within sixty days. It will hardly be contended that a purchaser in good faith, with the written consent of two-thirds of the stockholders, would get no title at all simply because the consent had not been obtained at a meeting duly called. On well-understood principles, the corporation and the assenting stockholders would be estopped from claiming that the sale was *ultra vires* and void. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 185, 186; *People* v. *Ballard*, 134 id. 269, 295.) In the *Kent* case the court said: " In the application of the doctrine of *ultra vires*, it is to be borne in mind that it has two phases: one where the public is concerned; one where the question is between the corporate body and the stockholders in it, or between it and its stockholders, and third parties dealing with it and through it with them. When the public is concerned to restrain a corporation within the limit of the power given to it by its charter, an assent by the stockholders to the use of unauthorized power by the corporate body will be of no avail. When it is a question of the right of a stockholder to restrain the corporate body within its express or incidental powers, the stockholder may in many cases be denied, on the ground of his express assent or his intelligent though

tacit consent to the corporate action. If there be a departure from statutory direction, which is to be considered merely a breach of trust to be restrained by a stockholder, it is pertinent to consider what has been his conduct in regard thereto. A corporation may do acts which affect the public to its harm, inasmuch as they are *per se* illegal or are *malum prohibitum*. Then no assent of stockholders can validate them. It may do acts not thus illegal, though there is want of power to do them, which affect only the interests of the stockholders. They may be made good by the assent of the stockholders, so that strangers to the stockholders dealing in good faith with the corporation will be protected in a reliance upon those acts."

This transaction was of no public concern; the claim of *ultra vires* is one merely between the stockholders. In such case the only defect being lack of notice to the dissenting stockholder, through obtaining the consent otherwise than at a stockholders' meeting, the sale was not void, but was voidable. Certainly, then, the assenting stockholders, who although in control of the corporation failed to call a stockholders' meeting, and who have been benefited by the sale consummated by them, and upon which they stand, are estopped from pleading *ultra vires*.

Neither should the petitioner, simply because she has a right to institute an action to set aside the sale, be compelled to resort to that remedy. She is not prosecuting an equitable action, but is pursuing a statutory right. Other than the assenting stockholders, the petitioner was the only one entitled to demand a stockholders' meeting, called on notice. She elects to waive the meeting and notice and to adopt and stand on the sale. As the sale could only be made by resort to section 16 of the Stock Corporation Law and by obtaining the consent of two-thirds of the stockholders therein provided, it must be held that the sale was made upon the authority of that section. Accordingly, as was said by Judge VANN in *Matter of Timmis (supra)*: "As the appellant availed itself of the privilege conferred by the statute, it must comply with the condition prescribed for the exercise thereof."

The order should be reversed, with ten dollars costs and

disbursements, and the petition granted, with ten dollars costs and the costs of the proceeding.

CLARKE, P. J., and LAUGHLIN, J., concurred; PAGE and MERRELL, JJ., dissented.

PAGE, J. (dissenting):

Mary Drosnes, an owner of ten shares of stock of the Film Amusement Company, Inc. (this being one-third of the capital stock issued and outstanding), moved the court on petition and affidavits, for the appointment of three persons to appraise the value of her stock and designating the time and place at which the appraisers shall meet and also direct the manner in which payment for said stock be made as provided in section 17 of the Stock Corporation Law (Consol. Laws, chap. 59; Laws of 1909, chap. 61). The petition alleges upon information and belief that a meeting of the stockholders of the said corporation was called to be held at the office of Abram A. Silberberg, attorney for said company, on the 20th day of November, 1915, and was held at that time and place to consider and vote upon a proposition to sell and convey certain of its property, rights and privileges, to wit, the chattels and things at Nos. 2078–2080 Third avenue, borough of Manhattan, and to lease the theatre building occupied by the said corporation to the G. & G. Amusement Corporation, a domestic stock corporation; that the petitioner duly attended said meeting by Louis O. Drosnes, who has a power of attorney from the petitioner, and that a vote was taken at said meeting upon the proposition to convey said property, rights and privileges of the said Film Amusement Company, Inc., to the G. & G. Amusement Corporation aforesaid, and that two-thirds of the stock voted in favor of the proposition of sale or conveyance, and after the declaration of the result of the vote said Louis O. Drosnes, in behalf of the petitioner, protested at said meeting against the proposed sale, and then and there demanded payment for the petitioner's stock; that prior to making the petition and within twenty days after the date of said meeting the petitioner caused to be served upon the corporation a written notice, signed by her, objecting to the proposed sale and demanding payment for said stock; that sixty days have

not elapsed since said meeting was held. On the return day of the motion an answer was presented by the corporation denying that a meeting of stockholders of the corporation was held at the time and place alleged in the petition or at any other time to consider and vote upon a proposition to sell the company's rights, properties and privileges; denying that the petitioner attended any stockholders' meeting by Louis O. Drosnes or any other person and denying that a vote was taken at any stockholders' meeting upon the proposition to convey property, rights and privileges of the said corporation to the G. & G. Amusement Corporation and also denying that two-thirds of the stock voted in favor of the proposition of sale or conveyance, and that after the declaration of the result, Louis O. Drosnes protested against the proposed sale and demanded payment of the stock. It admits that a notice such as alleged in and a copy of which is annexed to the petition was served upon the president of the company. The answer then sets forth the facts according to its contention. Upon presentation of these papers to the court, it appointed a referee to take proof of the issues made by the petition and answer and to remit the testimony to the court. Upon the coming in of the report of the referee the petitioner's attorneys served a notice of motion upon the report, testimony and upon the motion papers, and the opposing affidavits, for the relief demanded in the petition. After hearing argument the court denied the motion. It was clearly established that the meeting called to meet, and which met, at the office of Mr. Silberberg was a special meeting of the directors of the corporation. The notice of the meeting was addressed to four persons, two of whom were directors and not stockholders. It stated: " Please take notice that a special meeting of the directors of the Film Amusement Company will be held at the office of Abr. A. Silberberg, the company's attorney," giving the address and specifying ten A. M. of Saturday, November 20, 1915, as the time for holding the same, for the purpose of transacting the business specified in the petition. The minutes of the meeting were offered in evidence and showed three directors present; the report of the president that he had on November seventeenth executed

a contract for the sale of the chattels and things in the theatre and for a lease of the theatre; that a resolution was offered that the corporation sell all the chattels and things owned by the company in the theatre and lease the same to Abraham Grossman and Isidore Golbinsky, or their nominee, and that a " vote was called for by the directors present and the vote was recorded as follows: Mr. Nathan Doniger voted in favor of the resolution; Mr. Jacob Herskowitz voted in favor of the resolution and Mr. Louis O. Drosnes voted against the resolution." Nowhere in the minutes are the words " stock " or " stockholders " mentioned. These minutes were introduced in evidence during the cross-examination of Louis O. Drosnes, who stated that they were correct, and furthermore it was proved by him that he had stated as the grounds of his opposition that he had a better offer from the Aurora Amusement Company, who offered the same terms but in addition agreed to take him in as a shareholder. The petitioner thus wholly failed to prove the allegation of her petition. This is a statutory proceeding, and the sole question presented on this appeal is whether upon the evidence the petitioner has shown herself entitled to the relief demanded. In this proceeding we are not called upon to review the acts of directors. If they have exceeded their powers and wrongfully disposed of corporate property there are ample remedies which may be invoked by a stockholder in which the legality of their acts and their accountability to the corporation can be determined. Nor is the question whether the sale is void or voidable. That question could only be determined in an action in which the purchasing corporation was a party.

Section 16 of the Stock Corporation Law, so far as material to this case, provides: " A stock corporation, * * * with the consent of two-thirds of its stock, may sell and convey its property, rights, privileges and franchises, or any interest therein or any part thereof to a domestic corporation, engaged in a business of the same general character, * * *. Before such sale or conveyance shall be made such consent shall be obtained at a meeting of the stockholders called upon like notice as that required for an annual meeting."

I cannot agree with Mr. Justice SHEARN that this require-

ment is a mere technicality which may be disregarded, and that the sale may be made at a meeting of directors, if the directors voting for the proposition, individually own two-thirds of the stock, or that the owners of two-thirds of the stock without holding any meeting can consent to the sale in writing and that a dissenting stockholder can in such cases waive the meeting and elect to stand on the sale, and thereby become entitled to the relief given by section 17. That section provides: " If any stockholder not voting in favor of such proposed sale or conveyance shall at *such meeting*, or within twenty days thereafter, object to such sale, and demand payment for his stock, he may, within sixty days after *such meeting*, apply to the Supreme Court " for the appointment of appraisers.

It is clear that the relief can only be granted where a meeting of stockholders has been held pursuant to section 16, and that the dissenting stockholder has the right to invoke the remedy provided in section 17. For a meeting of stockholders pursuant to section 16 is a condition precedent to section 17 becoming effective. *Matter of Timmis* (200 N. Y. 177), relied upon by Mr. Justice SHEARN, is not an authority to the contrary. In that case a meeting of stockholders was held pursuant to notice, and the resolution authorizing the sale was adopted by the votes of the holders of more than two-thirds of the capital stock. The appellant claimed that as no specific mention was made in the notice that the meeting was held pursuant to section 16, no right to invoke the remedy under section 17 arose. The court said: " The sale in question would not be valid without resorting to section sixteen, and by resorting to that section the appellant opened the door for the respondent to enter and demand his rights under section seventeen. The claim that the earlier section was not invoked by specific mention in the notice calling a meeting of stockholders to authorize the sale, is met by the statement therein that ' under the charter of the corporation the calendar department cannot be transferred to a separate corporation without the authorization of the holders of two-thirds of the capital stock.' " (p. 183). This is far from authorizing a stockholder to waive the requirement of notice and a meeting of stockholders, and claiming the benefit of section 17, when

directors assume to act without having been authorized by a vote of two-thirds of the stock, or the consent to the sale is evidenced by a writing signed by the holders of two-thirds of the stock.

There is a fundamental distinction between the powers of directors acting at a directors' meeting and even the same persons acting as stockholders in a stockholders' meeting.

The distinction is not a mere technicality that may be disregarded. Where powers are conferred on directors they must be exercised in meetings of directors and cannot be exercised by stockholders. And where powers are to be exercised by stockholders at stockholders' meetings, the directors cannot assume those powers and discharge them at a directors' meeting, These distinctions are declared by law and are not a mere matter of nomenclature, as my brother SHEARN seems to assume, when he states: " This contention is advanced in face of the fact that, although the meeting was called a directors' meeting, those who constituted the board either owned or represented every share of stock."

The Legislature has declared that a sale may be made when authorized by a two-thirds vote of the stock at a stockholders' meeting called for that purpose in a specified manner, and when that is done a non-assenting stockholder by complying with section 17 may require the corporation to purchase his stock at an appraised price. The courts have no power to amend this statute and substitute provisions that we assume are as good or better, nor should we attempt to do so on the theory that we are doing substantial justice in a particular case. The petitioner failed to show that she was entitled to the relief demanded and the motion was properly denied.

The order should be affirmed, with costs, as on an appeal from a judgment.

MERRELL, J., concurred.

Order reversed, with ten dollars costs and disbursements, and petition granted, with ten dollars costs and costs of the proceeding.