[Civ. No. 10535.   Third Dist.   Aug. 28, 1963.]

VIRGINIA E. McDERMOTT et al., Plaintiffs and Appellants, v. BEAR FILM COMPANY, Defendant and Respondent.

Bradford, Cross, Dahl & Hefner for Plaintiffs and Appellants.

Heller, Ehrman, White & McAuliffe, Donald W. Falconer and Richard E. Herndon for Defendant and Respondent.

FRIEDMAN, J.—The suit is a derivative one by minority shareholders of Color-Pix, Inc., an Oregon corporation doing business in California. Plaintiffs appeal from a judgment dismissing the action as to defendant Bear Film Co., a dissolved California corporation, after the latter's general demurrer to an amended complaint had been sustained without leave to amend. The amended complaint alleges that plaintiffs own 25 per cent of Color-Pix stock; that owners of the other 75 per cent are R. K. Chace and his wife, Hazel; that Mr. and Mrs. Chace and one Ullfers were directors of the corporation; that Chace dominated his wife and Ullfers and dominated the affairs of Color-Pix; that the Chaces and Ullfers sold all the assets of Color-Pix to Bear Film Co. without notifying plaintiffs of a shareholders' meeting to authorize the sale, although required to do so by Oregon Revised Statutes sections 57.150 and 57.511; that plaintiffs neither knew of the sale nor consented to it. The complaint charges that the sale to Bear Film Co. was "illegal, *ultra vires,* and void," seeks to rescind it and asks for reconveyance of the assets or their proceeds to Color-Pix.

Plaintiffs contend that their amended complaint states a claim for rescission against Bear Film Co.; that the trial court erred in sustaining the general demurrer.

Since Color-Pix is an Oregon corporation, the laws of that state govern its internal procedures and fix its corporate power to make the conveyance in question. (*Southern Sierras Power Co.* v. *Railroad Com.,* 205 Cal. 479, 481-482 [271 P. 747]; 17 Fletcher, Cyclopedia Corporations, § 8318, p. 85; Goodrich, Conflict of Laws (1949 ed.) § 108, p. 315.) Plaintiffs concede that their claim is grounded on Oregon law, that doctrines of California and other states are helpful only as a means of ascertaining what result the Oregon courts might

reach. Gravamen of their complaint is that the directors of Color-Pix violated provisions of the Oregon corporation statutes by failing to submit the proposed sale of all corporate assets to a meeting of shareholders after notice to all shareholders.* An analogous limitation on the sale of all corporate assets is section 3901 of the California Corporations Code. A major difference between the two statutes is that Oregon law permits the sale upon the affirmative vote of two-thirds of the shares voting at a shareholders' meeting, while California requirements are satisfied by written consent of majority shareholders. (See, however, Cal. Corp. Code, § 2201.)

Basic defense theory is that the dominant shareholders'

---

*Section 57.511, Oregon Revised Statutes, provides as follows:

"A sale, lease, exchange, mortgage, pledge, or other disposition of all or substantially all, the property and assets, with or without the good will, of a corporation, if not made in the usual and regular course of its business, may be made upon such terms and conditions and for such consideration, which may consist in whole or in part of money or property, real or personal, including shares of any other corporation, domestic or foreign, as may be authorized in the following manner:

"(1) The board of directors shall adopt a resolution recommending such sale, lease, exchange, mortgage, pledge, or other disposition and directing the submission thereof to a vote at a meeting of shareholders, which may be either an annual or a special meeting.

"(2) Written or printed notice shall be given to each shareholder of record entitled to vote at such meeting within the time and in the manner provided in this chapter for the giving of notice of meetings of shareholders, and, whether the meeting be annual or a special meeting, shall state that the purpose, or one of the purposes, of such meeting is to consider the proposed sale, lease, exchange, mortgage, pledge or other disposition.

"(3) At such meeting the shareholders may authorize such sale, lease, exchange, mortgage, pledge, or other disposition and may fix, or may authorize the board of directors to fix, any or all of the terms and conditions thereof and the consideration to be received by the corporation therefor. Each outstanding share of the corporation shall be entitled to vote thereon, whether or not entitled to vote thereon by the provisions of the articles of incorporation. Such authorization shall require the affirmative vote of the holders of at least two-thirds of the outstanding shares of the corporation, unless any class of shares is entitled to vote as a class thereon, in which event such authorization shall require the affirmative vote of the holders of at least two-thirds of the outstanding shares of each class of shares entitled to vote as a class thereon and of the total outstanding shares."

Section 57.150, Oregon Revised Statutes, provides:

"Written or printed notice stating the place, day and hour of the meeting and, in case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than 10 nor more than 50 days before the date of the meeting, either personally or by mail, by or at the direction of the president, the secretary or the officer or persons calling the meeting, to each shareholder of record entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail addressed to the shareholder at his address as it appears on the stock transfer books of the corporation, with postage thereon prepaid."

neglect of internal corporate procedural requirements does not permit the corporation (or its minority shareholders in a representative suit) to rescind an executed transfer of assets in the hands of the transferee.

The parties have not cited, nor has our own research disclosed, pertinent Oregon case law. Plaintiffs rely strongly on *Solorza* v. *Park Water Co.*, 86 Cal.App.2d 653 [195 P.2d 523], in which shareholders maintained a representative action to rescind a sale of corporate assets made by directors who had violated the California statute by failing to secure majority consent of the shareholders. The court held that the statutory violation made the sale ultra vires and voidable at the instance of the shareholders, who could secure rescission by first restoring the consideration paid by the transferee.

The *Solorza* case is not influential here. First, it involved a situation where the requisite portion (majority) of the shares never consented to the sale; here, the Oregon statute permits the sale by a two-thirds vote of the shares, and 75 per cent of the shares, owned by the Chaces, did in fact consent. Thus, *Solorza* involved absence of real corporate consent, while the present case involves only failure to secure consent of minority shareholders who had inadequate voting power to block the sale in any event.

Second, the ultra vires terminology used in *Solorza* may be misleading. ▮ In its true sense the phrase ultra vires describes action which is beyond the purpose or power of the corporation. (*Wagg* v. *Toler,* 80 Cal.App. 501, 510 [251 P. 973]; Ballantine on Corporations (1946 ed.) § 89, p. 240; 7 Fletcher, Cyclopedia Corporations, § 3399, p. 561.) Some courts have inflated the phrase to characterize acts which are within corporate purpose or power but performed in an unauthorized manner or without authority. (Ballantine, *op. cit. supra,* § 91, p. 246; 7 Fletcher, *op. cit. supra,* § 3402, p. 567.) The *Solorza* case uses ultra vires in its inflated and nontechnical sense. As observed in *Miners' Ditch Co.* v. *Zellerbach,* 37 Cal. 543, 578 [99 Am.Dec. 300]: ". . . [T]he rights of strangers dealing with corporations may vary, according as the act is ultra vires in one, or the other, of these senses." Labeling the present transaction ultra vires does not automatically call the Solorza doctrine into play. Here plaintiffs plead no violation of corporate purpose or powers. They allege only a violation of statutory procedures.

Finally, *Solorza* permits rescission of an executed transaction not alleged to be fraudulent or unsupported by con-

sideration in a derivative lawsuit, which is really a suit by the corporation itself. ■ The general rule is that shareholders in a derivative suit are only representatives of the corporation, which must itself have a cause of action. (*Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc.*, 45 Cal.2d 448, 453 [289 P.2d 466] ; *Sutter* v. *General Petroleum Corp.*, 28 Cal.2d 525, 530 [170 P.2d 898, 167 A.L.R. 271] ; 13 Fletcher, Cyclopedia Corporations, § 5859, p. 256, § 5911, p. 367.) Perhaps, as *Solorza* might imply, this general rule is satisfied where consent of the requisite portion of shares and thus of the corporation itself is lacking. Here, in contrast, plaintiffs seek to maintain a representative suit on behalf of the corporation to set aside a transaction authorized by the necessary voting power within the corporation but without compliance with internal statutory procedures. Plaintiffs point to no authority permitting the corporation itself to rescind under such circumstances.

Both Oregon and California have adopted statutes which limit or prevent assertion of restrictions on corporate authority as a means of nullifying executed transactions of the corporation. (Ore. Rev. Stats, § 57.040; Cal. Corp. Code, § 803.) Generally speaking, such statutes have the objective of abolishing the defense of ultra vires. (See 1 Ballantine & Sterling, California Corporation Laws, § 65, p. 114.) Defendant argues that these statutes bar assertion of the present species of noncompliance, that is, a statutory violation which is not ultra vires in the true sense. There is no need to pass on this argument.

■ Our appraisal of the Oregon law has led us to conclude that failure to give notice of a shareholders' meeting as prescribed by section 57.511 furnishes no ground for rescission of an executed transfer of corporate assets where, as here, more than two-thirds of the shares have consented to the transfer. Section 57.511 was adopted as part of the Oregon Business Corporation Act of 1953, Oregon Statutes of 1953, chapter 549, which was based upon the Model Business Corporation Act published by the American Bar Association in 1946. (Model Business Corporation Act Annotated, vol. 1, § 4.02, p. 4.) The Oregon consent statute finds its counterpart in section 72 of the model act. (*Ibid.*, vol. 2, pp. 370-371.) The latter in turn was drawn from section 157.72 of chapter 32, Illinois Revised Statutes. In cases applying the Illinois provision before its enactment by Oregon, the courts have held that nonconsenting shareholders representing less than

one-third of the stock may not set aside an executed transfer of corporate assets although the controlling interests in the corporation failed to send out notices of a shareholders' meeting to pass upon the transaction. (*In re Norcor Mfg. Co.,* 97 F.2d 208; *In re Robin Bros. Bakeries,* 22 F.Supp. 662.) In applying an Oregon statute drawn from a model act or statute of another state, the Oregon courts will accept it as judicially construed prior to Oregon's adoption of the law. (*City of Portland* v. *Duntley,* 185 Ore. 365 [203 P.2d 640, 650]; *Elliott* v. *Clement,* 175 Ore. 44 [149 P.2d 985, 151 P.2d 739, 740]; cf. *Charles Nelson Co.* v. *Morton,* 106 Cal.App. 144, 158-159 [228 P. 845].)

The cases applying the Illinois statute are consistent with the weight of American authority, which holds that failure to follow statutory formalities for obtaining shareholders' approval will not vitiate corporate transactions where in fact the requisite number of shareholders have consented; that such statutes are mandatory in requiring shareholders' consent, but only directory in specifying the procedure for obtaining consent; that a stranger dealing with the corporation in good faith is not put to the necessity of confirming the directors' compliance with internal notification procedures. (*Texas Co.* v. *Z. & M. Independent Oil Co.,* 156 F.2d 862; *In re Victoria Fusilli Co.,* 79 F.2d 611; United States Mortgage & Trust Co. v. Chicago & A. R. Co., 40 F.2d 386; *General S.S. Corp.* v. *Astoria Overseas Corp.,* 294 F. 861; *Bell* v. *Blessing,* 225 F. 750 [141 C.C.A. 34]; *In re Drosnes,* 187 App.Div. 425 [175 N.Y. 628]; *Black* v. *Ellis,* 129 App.Div. 140 [113 N.Y.S. 558]; 6A Fletcher, Cyclopedia Corporations, § 2949, p. 696; see Note, *Provisions for Stockholders' Consent in the Execution of Corporate Mortgages,* 51 Harv.L.Rev. 1074, 1080-1082; see also *Recommendation and Study Relating to Notice to Shareholders of Sale of Corporate Assets,* 2 Cal. Law Rev. Com. (1959), pp. G-16-G-17.) As the New York court observed in *In re Drosnes, supra* (at p. 632): ". . . It will hardly be contended that a purchaser in good faith, with the written consent of two-thirds of the stockholders, would get no title at all simply because the consent had not been obtained at a meeting duly called."

■ Neither the original complaint nor its amendment alleged fraud, inadequacy of consideration or collusion between the majority shareholders and Bear Film, the transferee of the assets. In their brief on appeal, plaintiffs make no claim of such special circumstances or of need for opportunity to al-

lege them. They had two opportunities to plead such circumstances in the trial court but did not do so. The trial court was justified in inferring that such special facts were not available and denial of leave to amend was quite proper. (*Ruinello* v. *Murray,* 36 Cal.2d 687, 690 [227 P.2d 251]; *Deauville* v. *Hall,* 188 Cal.App.2d 535, 547-548 [10 Cal.Rptr. 511].)

Judgment affirmed.

Pierce, P. J., and Janes, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.