**PHILLIPS PETROLEUM COMPANY, a corporation, Plaintiff-Appellee,**

v.

**ROCK CREEK MINING COMPANY, a corporation, et al., Defendants-Appellants.**

**No. 24584.**

United States Court of Appeals, Ninth Circuit.

Aug. 24, 1971.

E. Glenn Harmon (argued), Witherspoon, Kelley, Davenport & Toole, Spokane, Wash., Robert P. Dwyer, Wallace, Idaho, for defendants-appellants.

T. H. Eberle (argued), of Eberle, Berlin, Kading, Turnbow & Gillespie, Chartered, Boise, Idaho, for plaintiff-appellee.

## MEMORANDUM OPINION

Before CHAMBERS and KILKENNY, Circuit Judges, and WILLIAMS, District Judge.*

DAVID W. WILLIAMS, District Judge:

Rock Creek Silver-Lead Company (RCSL) was a closely held corporation which owned 36 lode mining claims in a rich mining district in Idaho. J. H. Christman owned 36% of its shares and Forrest Messer held 33%; thus, between them they held more than ⅔ of

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

all outstanding shares. Each served as an officer and director of the company. When not attending to the affairs of the company, Messer, a retired miner, worked in a railroad shop and Christman was employed as a salesman. Neither was experienced in corporate management.

In 1964, the RCSL Board of Directors composed of Christman, Messer and Richard Pierce, authorized Christman to seek out interested companies which might want to acquire and develop the Idaho mining claims. After some negotiations, an agreement was reached with Phillips Petroleum Company (Phillips) whereby that company was to pay $15,-000.00 for an option to lease the claims and received the right to work them for a period of 15 months. The stockholders of RCSL approved the directors' action and the agreement with Phillips at a meeting called for that purpose.

This first agreement eventually expired by its own terms. After the passage of several months following its expiration, on April 3, 1967, Phillips proposed to Messer and Christman that a new agreement be entered into under which Phillips would get an option not only to lease the claims, but to buy them outright. The total purchase price was two million dollars payable over a period of 11 years in installments ranging from $100,000.00 to $250,000.00 per year. Phillips was to pay $500.00 monthly as rent and for the privilege of working the claims and, if within 3 years from the date of the agreement it decided to exercise its option to purchase, the 11 year period over which the two million dollars was to be paid would commence. Messer and Christman agreed to this option arrangement on April 5, 1967.

At that time they asked Phillips' representative, one Fryhofer, whether a meeting of RCSL's shareholders should be called to ratify the arrangement and were advised by him that a shareholders' meeting would not be necessary.

On April 14, 1967, very soon after Messer and Christman signed the second option with Phillips, Phillips sent Messer a proposed amendment to the second agreement giving Phillips the right, after once exercising its option to purchase the claims, to withdraw from the entire arrangement at any time within the 11 year period and return the claims to RCSL; RCSL was to keep all payments toward the purchase price theretofore paid by Phillips. Messer and Christman agreed to the amendment.

Shortly thereafter, discussions began concerning a possible merger of RCSL with Rock Creek Mining Co. (Rock Creek), a larger company which owned 140 claims adjoining those held by RCSL. During the course of these discussions, Harry Magnuson, President of Rock Creek, was told that Messer and Christman had entered into the 1967 option with Phillips, and Magnuson advised them that in his opinion the agreement was unwise and that, after discussing it with his lawyer, he was convinced the agreement was unenforceable because no meeting of shareholders had been called to ratify the acts of RCSL's directors. Confident that he could avoid the option, Magnuson bought most of the shares held by Messer and Christman, effected a merger of RCSL with Rock Creek, and notified Phillips in writing that the merged company would not honor the second option. This suit by Phillips followed.

Phillips alleged it held a validly executed and binding option agreement and amendment thereto and asked the Idaho District Court to hold the amended contract enforceable. Defendants admitted that RCSL had authorized by appropriate stockholder action the first option agreement in 1964, but denied that the second option agreement, dated April 3, 1967, or the claimed amendment thereto constituted a valid and binding contract between Phillips and RCSL and asserted that RCSL shareholders had never authorized it. Indeed, defendants alleged that Pierce, the third director of RCSL, did not know of the second option agreement until long after it was signed, and

did not learn of the amendment thereto until this lawsuit was filed.

After considerable discovery had developed the facts, the plaintiff filed a motion pursuant to Rule 56 of F.R.Civ. P. for summary judgment. After a full hearing, the trial judge granted said motion without filing findings, but after observing that "I am of the opinion that Section 30–145 (of Idaho Corporation Code) under the undisputed facts does not protect the defendant and that with that out of the way there is no remaining disputed facts and that the plaintiff is entitled to a judgment, a summary judgment" (sic). (Tr. Vol. 2, Page 67).

Idaho Code Section 30–145 states:

1. A voluntary sale, lease or exchange of all the assets of a corporation may be authorized by it upon such terms and conditions as it deems expedient, including an exchange for shares in another corporation, domestic or foreign.

2. If the corporation is able to meet its liabilities then matured, such authorization shall be given at a meeting of shareholders, duly called for that purpose, and by such vote of the shareholders as may be provided for in the articles of incorporation or, if there be no such specific provisions, then by the vote of the holders of two thirds (⅔) of the voting power of all shareholders. If the corporation be unable to meet its liabilities then matured, such authorization may be given by the vote of the board of directors.

The principal question before the Court is whether the second option and its amendment, agreed to with Phillips by Messer and Christman when they were officers and directors of RCSL and holders of more than ⅔ of its shares, is binding against the company inasmuch as no formal meeting of its shareholders was called, its minority shareholders were not told of the proposal or given an opportunity to voice their opinion or to vote on the matter.

▋ Neither counsel calls our attention to any Idaho case construing Section 30–145 on this question.[1] However, there are cases from other jurisdictions which aid us in reaching a determination that the granting of the motion for summary judgment was proper and must be sustained. This is based upon our conclusion that the present defendants have no standing to raise the issue of shareholder ratification.

▋ State statutes requiring shareholder ratification for the transfer of assets are designed for the protection of the shareholders. If the shareholders waive formalities or acquiesce to a transfer made without ratification, they cannot later challenge the transfer, 19 Am.Jur. 2d, Corporations § 1014. Messer and Christman, then, have no ability grounds to complain about the agreement with Phillips, nor can their assigns who take with knowledge. Furthermore, if the requisite number of shareholders acquiesce in a transfer of corporate assets, the transfer is binding upon the corporation and cannot be set aside by nonconsenting minority shareholders.[2] Thus defendants are in error in contending that Pierce, as a nonconsenting minority shareholder, can challenge the validity of the option agreement. Since statutes such as Idaho's section 30–145 are

---

1. The plaintiffs also challenge the applicability of the statute on the ground that RCSL was insolvent at the time the agreement was entered into and on the ground that the agreement did not involve a transfer of all the assets of RCSL. Since determination of these issues is not necessary to a resolution of the present case, the court will simply note that the evidence indicates that RCSL was solvent at the time of this transaction and that the mining claims involved in the option did not constitute all of RCSL's assets, although any remaining claims retained by the company were probably of nominal value.

2. Such shareholders' interests are generally protected by statutes providing them with dissenter's rights.

for the protection of shareholders and not corporations, a corporation has no right under these statutes to challenge corporate transfers authorized by the requisite number of shareholders.

There is substantial authority for these conclusions. In Texas Co. v. Z. & M. Independent Oil Co., 156 F.2d 862, 866 (2nd Cir. 1946) the Court held that "shareholders may not complain of any contract of which they have individually approved regardless of the absence of statutory formalities."

In re Robin Bros. Bakeries, 22 F. Supp. 662 (N.D.Ill.1937), two directors who held 75% of the stock of the corporation voted in favor of a resolution to mortgage the corporation's assets. The Illinois Corporation Law required shareholder ratification of mortgages, and none was obtained. Noting that it was customary to dispense with notices of director's meetings in this corporation, the Court held that "actual approval, however informal, by the necessary number of stockholders, is sufficient," especially in close corporations. Id. at 663.

In McDermott v. Bear Film Co., 219 Cal.App.2d 607, 33 Cal.Rptr. 486 (1963), all of the directors sold all the assets of the company without shareholder ratification. Two of the three directors held 75% of the outstanding stock of the company. The Court said that the statutory provision requiring shareholder consent was mandatory, but that the statutory procedures to be used in getting the consent were directory rather than mandatory. See also Brainard v. De La Montanya, 18 Cal.2d 502, 511, 116 P.2d 66 (1941).

 The defendants have argued that the option agreement was not binding, not only because it had not received shareholder ratification, but also because it had not been approved by director Pierce. The fact that Pierce did not know of the agreement and that he did not consent to the option are "false issues", Mannon v. Pesula, 59 Cal.App. 2d 597, 139 P.2d 336 (1943). Inasmuch as the two remaining directors who did approve of the agreement also were officers and majority shareholders of RCSL, Pierce's approval was unnecessary. In *Mannon*, supra, the plaintiff sought to set aside a sale of corporate assets on the ground that the sale had not been approved by one of the corporation's three directors. The two directors who did approve the sale were the president and secretary of the company and between them they controlled a majority of the stock. The Court held that even though their approval was informally given and not recorded in writing, it served to make the approval of the third director "immaterial".

The judgment is affirmed.