### Samplid Enterprises, Inc. v. First Vermont Bank v. Gertrude Holl

[676 A.2d 774]

No. 95-347

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 8, 1996

*Bruce M. Lawlor* of *Lawlor & Koitto*, Springfield, for Plaintiff-Appellant.

*John A. Serafino* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee.

**Gibson, J.** Plaintiff entered a purchase and sale agreement to buy property defendant had obtained by deed in lieu of foreclosure, and sued defendant for return of its deposit after the transaction failed to close. Defendant counterclaimed against plaintiff and brought a third-party action against Gertrude Holl, plaintiff's president, who was to take title. The court granted defendant's motion for summary judgment. We affirm.

## I.

Defendant received title to the real property at the center of this dispute via deed in lieu of foreclosure from Classical Chef, Inc. in 1993, pursuant to an agreement between defendant and Classical Chef. That agreement was executed by the president of Classical Chef and two of its four shareholders, representing 90% of the voting

power of the corporation. Defendant took title to the real and personal property and listed it for sale. In January 1994, the parties entered into a purchase and sale contract for the purchase of the property for $135,000, and a deposit of $13,500 was paid to the broker. The contract provided for a closing on March 7, 1994, but it did not state that time was of the essence, nor did it include a financing contingency.

On March 4, 1994, counsel for plaintiff notified defendant that missing from critical documents in the chain of title was a corporate resolution from Classical Chef, as required under the then-applicable statute, 11 V.S.A. § 2002,[1] raising a question about the validity of the transfer from Classical Chef to defendant, and hence from defendant to plaintiff.

The parties thereafter proceeded on the basis that defendant would arrange for title insurance to cover any potential claim arising out of the alleged failure to comply with § 2002. Counsel for plaintiff objected to the coverage language of the first draft submitted for approval, suggesting removal of a policy exception and an adjustment in the coverage language to insure that the corporate problem was within the coverage.

A trial affidavit of plaintiff's counsel concedes that on April 6, 1994 he was advised that the title insurance company was willing to issue a policy omitting the exception objected to. Counsel further stated:

> 11. That on 7 April 1994, defendant, through its counsel, notified me that the corporate resolution I had requested from Classical Chef, Inc. to bring it into conformity with 11 V.S.A. § 2002 had still not been executed. At that time, I declined to accept the documentation proffered by the defendant and, pursuant to Paragraph 12 of the Purchase and Sale Contract, further declined to extend the date for closing; . . . .

---

[1] 11 V.S.A. § 2002 was repealed, 1993, No. 85, § 3(a), eff. Jan. 1, 1994. It stated in relevant part:

> A sale . . . of all, or substantially all, the property and assets, with or without the good will, of a corporation, if not made in the usual and regular course of its business, may be made upon such terms and conditions and for such consideration . . . as may be authorized in the following manner:
>
> . . . .
> (2) Written or printed notice shall be given to each shareholder of record entitled to vote . . . .
>
> (3) . . . Such authorization shall require the affirmative vote of the holders of at least two-thirds of the outstanding shares of the corporation . . . .

In plaintiff's memorandum of law opposing defendant's motion for summary judgment, the only objection noted to the April 6, 1994 version of the title insurance policy was that "defendant had yet to secure a resolution executed by the minority shareholders." The same memorandum noted that defendant was still pursuing acquisition of a corporate resolution from Classical Chef when the time for performance expired. The court found, however, and plaintiff did not contest, that as of April 7, 1994 defendant had tendered a corporate resolution signed by two Classical Chef shareholders representing a 90% ownership interest.

The closing did not occur for the reasons stated in the trial affidavit of plaintiff's counsel. The real estate broker for the transaction retained the deposit of $13,500,[2] and plaintiff brought the present action for its return. Defendant moved for summary judgment, which the court granted, concluding that defendant took title via a mortgage deed, no shareholder of Classical Chef had grounds to complain, and defendant was ready, willing and able to convey title on April 7, 1994. Gertrude Holl's motion to be dismissed as third-party defendant was denied. Plaintiff's appeal followed.

## II.

■ Summary judgment is appropriate only where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Murray v. White*, 155 Vt. 621, 628, 587 A.2d 975, 979 (1991); V.R.C.P. 56(c). In determining whether a genuine issue of fact exists, the nonmoving party receives the benefit of all reasonable doubts and inferences. *Pierce v. Riggs*, 149 Vt. 136, 139, 540 A.2d 655, 657 (1987). Allegations to the contrary must be supported by specific facts sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

■ In the present case, there is no factual dispute that as of April 7, 1994 defendant had in hand a corporate resolution of Classical Chef

---

[2] Paragraph 21 of the agreement states in relevant part:

> Default: If Purchaser fails to close as provided herein, or is otherwise in default, Seller may terminate this contract by written notice to Purchaser and retain all Contract Deposits as liquidated damages, or may pursue all legal and equitable remedies provided by law. . . . If Seller fails to close as provided herein, or is otherwise in default, Purchaser may terminate the contract by written notice to Seller and shall receive back all deposit money and may pursue Purchaser's rights to all legal and equitable remedies provided by law.

authorizing transfer of the property to defendant, executed by shareholders representing 90% of the ownership interest, that the second mortgage of the shareholders had been discharged, and that the shareholders had executed documents terminating their security interest in the personalty associated with the property. It is also not disputed that on April 6, 1994 defendant tendered a title insurance policy that purported to address plaintiff's concerns.

In light of these uncontested facts, plaintiff's arguments are essentially two-fold: first, that defendant had not obtained all signatures of Classical Chef's shareholders before the time for performance expired, and second, that as to the title insurance, the policy specifically exempted from coverage claims arising as the result of Classical Chef's noncompliance with the law. Neither argument is legally supportable. Either a legally effective corporate resolution *or* a timely, complete, and effective title policy would have sufficed to satisfy plaintiff's demands. Both were tendered no later than April 7, 1994.

## A.

*Corporate Resolution.* Though plaintiff's argument is not specific, its only substantive objection to the resolution tendered on April 7, 1994 (i.e., other than timeliness) appears to be the absence of notice of the shareholders' meeting at which the resolution was adopted. Plaintiff relies on the proposition that shareholders representing 10% of the corporate stock might seek to upset the foreclosure deed to defendant on the basis of an absence of notice. Plaintiff argues that 11 V.S.A. § 2002 was designed to protect minority shareholders from the kind of general corporate mismanagement that in the end resulted in the company's failure and resultant default and foreclosure. Whatever mismanagement might have occurred within the company, however, is not addressed by § 2002, whose purpose is not to redress general mismanagement but to bar majority shareholders from unfairly dealing with minority owners in the sale of assets other than in the ordinary course of business. *Hospitality Inns, Inc. v. South Burlington R.I., Inc.*, 153 Vt. 410, 415, 571 A.2d 40, 43 (1989).

In the present case, the minority shareholders could not have prevented foreclosure, nor could they have affected the amount of proceeds credited to the shareholders as a result of the sale in lieu of foreclosure. Plaintiff offers no theory under which the majority shareholders of Classical Chef could have obtained any benefit, or minority shareholders could have suffered any detriment, from the

sale in lieu of foreclosure, as opposed to statutory foreclosure. Consequently, any absence of notice was harmless. See *McDermott v. Bear Film Co.*, 33 Cal. Rptr. 486, 489 (Ct. App. 1963) (failure to give notice of shareholders' meeting to holders of 25% of stock harmless where approval of holders of remaining 75% was obtained for transfer of assets, applying Oregon law); see also *Phillips Petroleum Co. v. Rock Creek Mining Co.*, 449 F.2d 664, 667 (9th Cir. 1971) (if requisite number of shareholders acquiesce in transfer of assets, transfer cannot be set aside by nonconsenting minority, applying Idaho law); *Rodgers v. Baughman*, 342 N.W.2d 801, 807 (Iowa 1983) (where statute required majority approval, informal action by 85% of shareholders was sufficient); 6A C. Keating & S. Flanagan, Fletcher Cyclopedia of the Law of Private Corporations § 2949.2.10, at 761 (1989) (if required number of stockholders individually consent, it is as effective as if they voted at formal meeting).

The logic of this principle is reinforced here, where defendant obtained title to the subject property by foreclosure, not by negotiation with the corporation or with any group of its shareholders. The opportunity for any self-dealing was nil.

In sum, plaintiff offers no theory under which the omission of notice to shareholders representing 10% of the ownership was more than a technical omission and constituted a cloud on the title. Notice could not have warded off foreclosure, nor were the majority shareholders in a position to alter the financial facts as reflected on the books of Classical Chef.

## B.

■ *Title Insurance.* Though the purchase and sale agreement did not provide for title insurance, plaintiff does not deny that it accepted the concept of title insurance as a means of remedying the asserted defect in Classical Chef's corporate resolution. Moreover, plaintiff concedes that the policy tendered on April 7, 1994 would have been adequate if submitted by April 4, 1994, plaintiff's interpretation of the closing deadline under the purchase and sale agreement. Plaintiff seizes on this date, because its attorney notified defendant of the claimed title defects on March 4, 1994; however, plaintiff misreads paragraph 20 of the purchase and sale agreement, which states in relevant part:

> 20. . . . If, at the expiration of thirty (30) days following the receipt of such notice [of encumbrances or defects] or on

the date set for closing, whichever is later, Seller is unable to convey marketable title free and clear of such encumbrances and defects, *Purchaser may terminate this contract*, and if so shall receive back all deposit money . . . .

(Emphasis added.) Termination might have occurred as early as April 4, 1994 under this provision, but it was not automatic. The trial affidavit of plaintiff's counsel concedes that plaintiff did not attempt to terminate the contract until April 7, 1994. On that day, defendant offered to sell the subject property, together with title insurance, the inadequacy of which plaintiff does not explain and which it concedes was adequate a few days earlier. Beyond this concession, plaintiff offers no theory of invalidity in its brief before this Court.

Having disposed of plaintiff's objections to the corporate resolution and its timeliness argument with respect to the title insurance, we conclude that there were no genuine issues of material fact before the court and that it properly granted defendant's motion for summary judgment.

We need not reach or consider the trial court's rationale that § 2002 could not apply to a deed in lieu of foreclosure as a matter of law. Even if that rationale were incorrect, the court's action was proper. See *Harlow v. Miller*, 147 Vt. 480, 483, 520 A.2d 995, 998 (1986) (Court may affirm judgment where right result was reached for wrong reason).

*Affirmed.*