Flood v. George, No. 424-8-03 Wncv (Katz, J., Feb. 8, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Washington County, ss.:                        Docket No. 424-8-03 WnCv


FLOOD

v.

GEORGE, ET AL.


ENTRY


Plaintiff Allen Flood alleges that shortly after purchasing a new home he discovered serious defects in the water and sewage systems requiring expensive repairs. He claims that the mortgagee-lender, Defendant Banknorth, and Banknorth's closing agent, Defendant Gilbert Normand, Esq., should be liable for damages because Banknorth advised him that it would provide legal counsel for his benefit, and Attorney Normand, Banknorth's counsel, neither provided adequate services for him nor timely advised him that he should obtain his own counsel. Banknorth and Attorney Normand, separately, have filed motions for summary judgment on all claims against them. We agree that no basis for liability is apparent on this record and grant both motions.

At the outset, we note that Banknorth and Attorney Normand properly supported their separate motions for summary judgment with separate statements of undisputed facts, each complying with Rule 56(c)(2) and (c)(3) standards. In response, Plaintiff filed separate statements of

disputed facts not complying with Rule 56(c)(2) or (c)(3). Plaintiff's statements include more argument than facts, the facts are presented incompletely, and there are nearly no citations – mandatory under Rule 56(c)(2) – to the record to support alleged facts. Though for purposes of summary judgment no significant factual disputes are evident anyway, Defendants' well supported facts are deemed undisputed to the extent that Plaintiff's statements do not comply with Rule 56(c)(2). See V.R.C.P. 56(c)(2); Samplid Enters. v. First Vermont Bank, 165 Vt. 22, 25 (1996). Attorneys are "on notice that they must include in their Rule 56(c)(2) statements *all* of the facts that they relied on in support of or in opposition to summary judgment, and . . . that facts that are omitted from their statements will not be considered by the court in ruling on the motion." Reporter's Notes – 2003 Amendment, V.R.C.P. 56 (emphasis added).

Plaintiff, at the time not represented by counsel, executed the P & S Agreement before ever approaching Banknorth for a loan. We treat as true for the purpose of this analysis Plaintiff's contention that in the course of obtaining the loan, he came to believe, based on an exchange with Robin Svarfvar, a Banknorth representative (dismissed as a defendant from this case by stipulation), that Banknorth would get a lawyer to represent his interests, and that lawyer may have been Attorney Normand. Plaintiff never took any steps to confirm that he had legal representation and had no contact whatsoever with Attorney Normand until the closing, at which Attorney Normand specifically stated that he did not represent Plaintiff. Until that time, Plaintiff had assumed that the attorney that he thought he had was doing whatever that attorney was supposed to do to protect his interests.

Plaintiff never in the course of the purchase of the home actually obtained his own counsel. Nevertheless, the P & S Agreement had a home inspection clause, and the home was inspected by a home inspector prior to the closing. The inspection uncovered some plumbing problems, which were fixed before the closing, but apparently did not uncover other, more expensive problems which materialized shortly after the closing, the subject of this lawsuit.

Plaintiff finds fault with Banknorth for leading him to believe that its attorney also would represent him. In the complaint, he styles this claim legally as both breach of fiduciary duty and a violation of the Consumer Fraud Act.

We discern no fiduciary relationship between Plaintiff and Banknorth. Absent special circumstances, Banknorth, as the creditor/mortgagee in an ordinary debtor/mortgagor–creditor/mortgagee relationship with Plaintiff, would have no such duty to Plaintiff. See Fuller v. Banknorth Mortg. Co., 173 Vt. 488, 490-91 (2001) (citing relevant Vermont cases). Plaintiff's counsel argues that Plaintiff approached Banknorth, and Robin Svarfvar specifically, as a consultant for the purpose of advising him on all aspects of the sale of the home, the loan, and the mortgage, and Banknorth acted in that capacity. As an incident of that relationship, Plaintiff, an obviously unsophisticated first-time home buyer, was led to believe that he did not need his own legal representation because Banknorth had undertaken the task of obtaining representation for him. While we accept that Plaintiff did not get his own counsel because of the mistaken impression that Banknorth would do that, the record lacks evidentiary support that Banknorth or Svarfvar acted as a consultant to Plaintiff outside the debtor-creditor relationship or that Plaintiff believed that Banknorth or Svarfvar was acting in such a role. On those issues, the record includes only the argument of Plaintiff's counsel. Moreover, the record includes no evidence whatsoever that Banknorth or Svarfvar reasonably should have had any idea that Plaintiff might have been relying on them for advice outside the immediate debtor-creditor relationship. At most, Plaintiff relied (reasonably or not) on a misrepresentation outside the debtor-creditor relationship that he knew was the purpose of their relationship. We do not believe that Plaintiff's reliance only, in circumstances such as these, is sufficient to charge Banknorth with a duty to act as a fiduciary for Plaintiff's benefit.

Even if Banknorth had such a duty, however, Plaintiff still must connect the breach of that duty to his claimed damages. But the damages all arise physical problems with the property not of an obvious nature. Plaintiff has failed to make a meaningful showing that his lack of legal

representation had any connection to the damages he suffered. The home did not go uninspected prior to the closing. Plaintiff's argument is that the home would have been inspected differently. As we understand it, one manifestation of his argument is something like this: 1) competent counsel would have known about environmental regulations requiring a particular permit for a septic system failing after 2007; 2) knowing that, competent counsel would have advised Plaintiff specifically to ensure the integrity of the septic system prior to closing; 3) Plaintiff would have heeded such advice and had the septic system specifically examined; 4) the examination would have revealed the problems with the system; 5) which would have been corrected or otherwise dealt with prior to closing; 6) but because he had no counsel, the inspection never occurred and he never learned of the problem; 7) therefore, the lack of counsel was a proximate cause of his damages. While this analysis has a ring of logic, it is wholly unsupported by the record.

First, Plaintiff does not cite to the environmental regulations upon which his theory is premised, or explain specifically how the regulation affects the quality of title. He offers no law or expert testimony to support his claims about what his would-be counsel's advice to him should have been under the circumstances, or how a potential future septic problem would prevent marketable title now. Additionally, he offers no expert testimony to the effect that the examination of the system would have revealed whatever the defects were, or that they even existed at the time they might have been discovered before the closing.

Moreover, nearly none of the steps in the causal chain, even if true, are so non-technical as to be in the province of a reasonable jury to determine without the benefit of substantial factual development aided by the testimony of experts, of which Plaintiff presents none. It is not enough to say, as Plaintiff does, that the absence of such testimony does not mean that Plaintiff cannot obtain it, and may yet present such testimony at trial. To defeat summary judgment, Plaintiff is required to demonstrate that a triable issue exists. Samplid Enterprises, Inc. v. First Vermont Bank, 165 Vt. 22, 25 (1996). This he has not done with regard to this issue despite plenty of time for discovery. We therefore conclude that Plaintiff has not

made any threshold showing of causation.  See <u>Cannata v. Wiener</u>, 173 Vt. 528, 531 (mem.) (some "quantum of evidence" establishing causation necessary to survive summary judgment).

Plaintiff's consumer fraud claim against Banknorth also is not viable.  The Consumer Fraud Act bars "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce."  9 V.S.A. § 2453(a).  For a claim of consumer fraud to arise, "(1) there must be a representation, practice, or omission likely to mislead the consumer; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is, likely to affect the consumer's conduct or decision with regard to a product."  <u>Greene v. Stevens Gas Serv.</u>, 2004 VT 67, ¶ 15 (quoting <u>Peabody v. P.J.'s Auto Village, Inc.</u>,153 Vt. 55, 57 (1989).  Assuming without deciding that the circumstances of this case could meet the first two elements, nevertheless, the third element cannot be met.  The alleged misrepresentation on which the claim is predicated is not "material" to the decision to buy the house or obtain the loan.  Both of those decisions were made without any interest in legal representation and prior to the alleged misrepresentation.  The only connection between the misrepresentation about who would obtain counsel and a decision to buy something would have to be predicated on the effect of the would-be attorney's advice.  But the failure of Plaintiff's causation argument reveals the inadequacy of that theory; Plaintiff cannot show that such advice would have had any relevant effect.

The problem in Plaintiff's proof is magnified by his citation to <u>Carter v. Gugliuzzi</u>, 168 Vt. 48 (1998) in support of the propositions that the Consumer Fraud Act applies in the home-selling context and may apply to individuals other than the seller-owner, such as the broker.  See <u>id</u>. at 53 (real estate broker subject to the Act).  Banknorth replies that the Act does not apply as a matter of principle to purely financial transactions by banks, an issue not decided in Vermont.  At least some courts hold to the contrary.  See, e.g., <u>Raymer v. Bay State Nat. Bank</u>, 424 N.E.2d 515, 521 (Mass. 1981) (state consumer fraud statute applies to banks and banking transactions); <u>Mid-American Nat. Bank. of Chicago v. First Savings and</u>

Loan Assoc. of South Holland, 515 N.E.2d 176, 182 (Ill. App. 1987) ("we believe that the Consumer Fraud Act may be applied to mortgage-lenders"). The immediate problem here, however, is not with the identities of the consumer and the seller, or the type of transaction, but the nature and function of the misrepresentation (i.e., materiality). In Carter, the broker was held responsible for misrepresentations about the house (the thing being sold) which induced the sale of the house and benefitted the broker, exactly the sort of situation the Act is intended to protect against. Here, the misrepresentation had nothing to do with the fact of or terms of the sale of the home or the loan. In other words, the operative misrepresentation is material only to the decision to hire an attorney, which Plaintiff has not shown to be related to the decision to buy the house or take the loan. It therefore is not material in the sense that matters for the consumer fraud claim, which consequently fails. See Carter, 168 Vt. at 56 (discussing materiality).

We agree, however, with Plaintiff's comment that he should have characterized his claim against Banknorth as negligent misrepresentation. Negligent misrepresentation is described as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977), quoted in Limoge v. People's Trust Co., 168 Vt. 265, 269 (1998). Such a claim more meaningfully fits the facts of this case than the breach of fiduciary duty and consumer fraud claims. Assuming the other elements could be met, the claim still does not survive summary judgment, however, for lack of a sufficient showing of causation, as discussed above in the context of Plaintiff's breach of fiduciary duty claim. Even if Plaintiff justifiably relied on Banknorth's negligent misrepresentation about counsel, Plaintiff has not

made a sufficient showing that his damages flowed from that misrepresentation.

The claims against Attorney Normand fare no better. No evidence suggests that any attorney-client relationship between Plaintiff and Attorney Normand ever came into existence. Nor do any other special circumstances imply any fiduciary duty running from Attorney Normand to Plaintiff. The two had no contact whatsoever until the closing, at which time Attorney Normand stated – and Plaintiff understood – that Attorney Normand did not represent Plaintiff. Even if Banknorth were to incur liability for inducing Plaintiff to believe that Attorney Normand represented him, that alone would not be sufficient to give rise to a duty on Attorney Normand's part. Plaintiff's only argument in this regard seems to be that the misrepresentation by agent Svarfvar is attributable to principal Banknorth and then again to Attorney Normand, another of Banknorth's agents, as a mere incident of the agent-principal relationship. We are unaware of and decline to recognize such an application of agency law and Plaintiff cites to no law in support of it.

Lastly, with no misrepresentation of any kind attributable to Attorney Normand, there can be no consumer fraud claim.

ORDER

Banknorth's and Attorney Normand's motions for summary judgment are granted.

Dated at Montpelier, Vermont, _____, 20__.

_____

Judge