[S. F. No. 7346. In Bank.—November 29, 1916.]

## WESTERN STATES LIFE INSURANCE COMPANY (a Corporation), Respondent, v. ARTHUR D. LOCK-WOOD, as Executor, etc., Appellant.

CORPORATION LAW — SUBSCRIPTIONS FOR STOCK — RECEIPT OF SECRET PROFITS BY PRESIDENT AND DIRECTOR—RIGHT OF CORPORATION TO RECOVER.—Where an insurance corporation entered into a contract with certain persons employing them to secure subscriptions to the full amount of the fixed capital of the corporation within one year, paying thirteen dollars per share on the first fifty thousand shares and fifteen dollars per share on the remaining fifty thousand shares, and receiving as their compensation all sums they could obtain in excess of said amounts, and while said contract was unexecuted the president and director of the corporation secretly became a partner of the agents in the net profits received and to be received by them under said contract, the consideration therefor being such aid, assistance, and co-operation as he might be able to give them in completing their undertaking, and under this arrangement, while still director and president of the corporation, he received the profits to his own use, all without notice to or knowledge of the corporation or any of its directors, the president and director having placed himself in a position antagonistic, so far as pecuniary interest was concerned, to the interest of those who were to subscribe for the stock, cannot retain the secret profits received by him, and they may be recovered by the corporation.

ID.—DAMAGE TO CORPORATION IMMATERIAL—SECRET PROFITS OWNED BY CORPORATION.—It is immaterial that the corporation may not have been damaged by the transaction, as such secret profits belong to the corporation for the benefit of its stockholders.

ID.—DEFENSE—VALUE OF SERVICES IMMATERIAL.—In an action by the corporation to recover the secret profits from the estate of the deceased president and director, the allegation in the answer that the "work, labor, services and assistance" of the president and director

in connection with the carrying out of the agreement "were fairly and reasonably worth the said sum of $40,500," is immaterial and properly stricken out.

ID.—DUTY OF DIRECTORS—PROMOTERS OF CORPORATION—NOT ENTITLED TO COMPENSATION.—It was the duty of the directors, imposed by law, to assist in obtaining subscriptions for stock, which duty was not lessened by the contract with the agents, and in the matter of obtaining the subscriptions they were practically promoters of the corporation, forbidden to make any secret profit, and whatever work any of them did in that behalf must be held to have been done in execution of the trust as director.

ID.—VIOLATION OF OBLIGATION BY OFFICER—RECOVERY OF VALUE OF SERVICES—INAPPLICABILITY OF RULE TO SECRET PROFITS.—Where a corporation is simply seeking to recover such secret profits as were made by one of its officers in a transaction wherein he was forbidden to make any secret profits, and which secret profits belonged to the corporation, the rule that even if there be a violation of the obligation resting on an officer of a corporation, nevertheless the corporation must pay for the value of the thing which it received, has no application.

ID.—VALUE OF SERVICES OF PRESIDENT TO AGENTS—EXPENDITURES—IMMATERIALITY.—The value to the agents, in carrying out their contract, of the co-operation of the president and director, the reasonable value of his time and service in performing his part of his agreement with them, or even the amount of money expended by him for traveling and other expenses, are not material.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, Titus, Creed & Dall, and A. E. Bolton, for Appellant.

Otto Irving Wise, for Respondent.

ANGELLOTTI, C. J.—This is an appeal by defendant on the judgment-roll from a judgment in favor of plaintiff. It is the second appeal in the case, a former judgment given on the pleadings in favor of the estate of Mr. Briggs on the theory that the complaint did not state facts sufficient to constitute a cause of action having been reversed by this court. (166 Cal. 185, [135 Pac. 496].)

As stated in the opinion then filed the case made by the complaint was as follows:

"Plaintiff is a corporation incorporated on October 11, 1909, under the law of this state, to do a life insurance business therein. Its articles of incorporation provided for a capital stock of one million dollars, divided into one hundred thousand shares of the par value of ten dollars each. On October 16, 1909, it entered into a written agreement with the partnership firm of Pratt & Grigsby, by which said firm agreed to sell all the capital stock of plaintiff within one year from the date of its incorporation, and to pay plaintiff therefor thirteen dollars per share for the first fifty thousand shares sold and issued and fifteen dollars per share for the remaining fifty thousand shares, making in all one million four hundred thousand dollars, said sale to be without expense of any kind to the plaintiff. On October 19, 1909, said Arthur R. Briggs, defendant's testator, was elected president of plaintiff corporation, and from that day to and including October 11, 1910, was a director and the president of said corporation. In January, 1910, 'he demanded of said Pratt & Grigsby a sum equal to twenty-two and one-half per cent of the net profits earned, or that would be earned by said Pratt & Grigsby from the sale of the capital stock of plaintiff corporation under and by virtue of the agreement between said Pratt & Grigsby and plaintiff,' and 'threatened to resign as president of plaintiff and that he would not render further service as such president in aiding said Pratt & Grigsby in the sale of the capital stock of plaintiff' if Pratt & Grigsby refused to pay him said amount. Pratt & Grigsby, 'well knowing that without the aid, assistance, and co-operation of said Arthur R. Briggs they would be unable to sell the entire capital stock of plaintiff within one year from the date of the incorporation of plaintiff as provided in their agreement and by law,' thereupon agreed to pay him the percentage demanded. They did sell all the stock as provided in their agreement between them and plaintiff, and prior to October 11, 1910, paid to plaintiff therefor the sum of one million four hundred thousand dollars. They sold the same at such price that they 'earned a net profit of one hundred and eighty thousand dollars,' and in pursuance of their agreement with defendant's testator paid to him at various dates between March 7, 1910, and September 22, 1910, amounts

aggregating forty thousand five hundred dollars, being twenty-two and one-half per cent of their net profits of one hundred and eighty thousand dollars. Plaintiff and its board of directors never knew anything about the transaction between Mr. Briggs and Pratt & Grigsby until after the death of the former, which occurred October 24, 1910, and never authorized, consented to, or acquiesced therein.''

The action was subsequently tried, and the findings of the trial court were in complete accord with the allegations of the complaint, except that it was substantially found that the amount received by defendant's testator from Pratt & Grigsby on account of the matters referred to in the complaint was thirty-eight thousand one hundred dollars instead of forty thousand five hundred dollars. This was because, as found by the trial court, Mr. Briggs, in accord with his agreement with Pratt & Grigsby, paid the latter sixty per cent of his salary of one thousand dollars per month as president, paid him by plaintiff for June, July, August, and September, 1910. Judgment was given in favor of plaintiff against appellant, as the surviving executor of the will of deceased, for thirty-eight thousand one hundred dollars, with interest from June 13, 1911. The appeal being on the judgment-roll alone, the findings of fact are necessarily conclusive on this appeal, and, in view of the ruling on the former appeal, it must be held that such findings support the judgment. The alleged errors assigned on this appeal are that the trial court erred in sustaining a demurrer to the first, second, and third separate answers and defenses of the defendant, and in granting, in so far as one part of the answer was concerned, a motion to strike out.

An examination of the matter stricken from the answer and the matters set forth in the separate answers and defenses discloses no good ground for holding, in view of what was said on the former appeal, and has become the law of this case, that the trial court erred in any of these rulings.

In the opinion on the former appeal it was shown that the situation was that, the contract of Pratt & Grigsby with plaintiff corporation being unexecuted, the same being a contract of employment to secure subscriptions to the full amount of the fixed capital within one year, paying thirteen dollars per share on the first fifty thousand shares and fifteen dollars per share on the remaining fifty thousand shares, and re-

ceiving as their compensation all sums they could obtain in excess of said amounts, Mr. Briggs, being a director and the president of plaintiff corporation, secretly became a partner of Pratt & Grigsby in the net profits received and to be received by them under said contract, the consideration therefor being such aid, assistance, and co-operation as he might be able to give them in completing their undertaking, and under this arrangement, while still director and president of plaintiff, received the profits sued for to his own use, all without notice to or knowledge of the plaintiff or any of its directors.

It was held for reasons stated in the opinion that in acquiring this interest in the contract of Pratt & Grigsby, Mr. Briggs acquired an interest that was possibly adverse to his fiduciary duty, and that, in so far as pecuniary interest was concerned, he secretly placed himself in a position that was hostile to the interests he was bound to protect as an officer of the corporation, and in a position where conflict might arise between his trust duty and his personal interest. The court said: "The rules we have referred to do not allow the president of a corporation to occupy such a position. For him to do so is a violation or disregard of the obligations incident to the fiduciary or *quasi*-trust relation that he occupies. It matters not that the officer is entirely free from any intent to injure the corporation in the slightest degree, acting in fact in the highest good faith throughout, or that his actions really advantage the corporation. No inquiry may be made into such matters. The inquiry in this regard is stopped when the relation is disclosed."

It was further said that by acquiring this interest in the net profits of Pratt & Grigsby, Mr. Briggs clearly placed himself in a position antagonistic, so far as pecuniary interest was concerned, to the interests of those who were to subscribe for the stock, for it immediately became to his pecuniary interest to assist in obtaining from them as high a price as possible for the stock over and above the net amount that was to go to plaintiff corporation. It was held that the duty of securing subscriptions to the full amount of the fixed capital was one enjoined by the law upon the directors, that no director could lawfully make any secret profits for himself in the matter of such subscriptions, and that in the discharge of this trust they were practically "promoters of the corpo-

ration forbidden to make any secret profit." It was said, "Whatever work any of them actually did in that behalf they must be held to have done as directors, in execution of the trust confided to them." It was squarely held, for reasons stated in the opinion, that Mr. Briggs being the president and director of a corporation actually engaged in obtaining the subscriptions to its capital stock necessary under the law to enable it to commence and continue its business, stood in such a relation to those who subscribed and thereby became stockholders, that he was absolutely precluded from assuming any such position without a full and fair disclosure.

It was substantially held that any secret profits obtained by Mr. Briggs under his arrangement with Pratt & Grigsby could be recovered by plaintiff corporation, and that it was entirely immaterial that the corporation may not have been damaged by the transaction, such secret profits belonging to the corporation for the benefit of its stockholders.

Of course, as stated in the opinion, the ruling on the former appeal was upon the assumption that the complaint stated the facts correctly. That the allegations of the complaint were in all respects true is now established by the findings of the trial court. That the "work, labor, services, and assistance" of Mr. Briggs in connection with the carrying out of the Pratt & Grigsby agreement "were fairly and reasonably worth the said sum of forty thousand five hundred dollars," which was alleged in the portion of the answer stricken out by the trial court, is clearly immaterial, in view of the opinion on the former appeal. It remains only to determine whether there is anything material alleged in the separate answers and defenses to change the situation.

Substantially the matters alleged are as follows: Mr. Briggs was president of the California Development Board, and while also president and a director of plaintiff "was not required or expected to render any services as such . . . except such mere formal services as were required of him to be performed by law as such, until said Pratt & Grigsby should have sold said stock so as to enable said corporation to do the business for which it was incorporated." Prior to the agreement between him and Pratt & Grigsby it had become apparent to them (Briggs and Pratt & Grigsby) that the latter could not perform their part of the contract "without the active aid, time, assistance, and co-operation" of Briggs. For

this reason the agreement was entered into between them, Briggs to devote "his time, energies, services, and abilities" to the work. Briggs thereupon resigned his position as president of the California Development Board, giving up "the salary connected with said position," and performed his part of his contract with Pratt & Grigsby, giving his entire time thereto, and expending "large and considerable sums of money for his expenses in so doing and in necessary travel . . . on said business." The fact that he was doing all this was known to plaintiff, its officers, directors; and members, and they made no objection thereto, and his services and the benefit thereof were desired and knowingly accepted and received by plaintiff and its officers. His services and efforts were indispensably necessary to the carrying out of this contract by Pratt & Grigsby. The services of Briggs were reasonably worth forty thousand five hundred dollars, and were worth that amount to plaintiff corporation. Plaintiff corporation has not in any way paid or compensated Briggs for such "work, labor, and expenditure." Plaintiff corporation settled with Pratt & Grigsby upon the completion of their contract, with full knowledge of these facts, affirming and ratifying said contract between it and Pratt & Grigsby and allowing them to receive the full amount of the compensation expressed therein. Plaintiff never offered to pay the executors of the will of Mr. Briggs any sum of money for his services. Because of the payment to him by Pratt & Grigsby, Briggs never made any claim against plaintiff corporation for compensation.

To our minds, in view of what was said on the former decision, there is nothing in all this to affect the case made by the complaint in so far as profits received by Mr. Briggs by reason of his arrangement with Pratt & Grigsby are concerned. It clearly enough appears from the opinion that it was in view of the duties and obligations held to be imposed on the directors *by the law,* and existing solely because of the fact that they were directors, duties and obligations in no degree lessened by their agreement employing Pratt & Grigsby to assist them in obtaining subscriptions, that it was held that in the matter of obtaining these subscriptions they were practically promoters of the corporation, forbidden to make any secret profit, and that whatever work any of them did in that behalf, he must be held to have done in execution

of his trust as such director. In the face of this ruling, we cannot see any force in the attempted allegation that Mr. Briggs "was not required or expected to render any services," etc., in connection with the obtaining of subscriptions. It is a mere conclusion of the pleader, opposed to what was said in the former opinion as to the law applicable in such matters. It was held that in view of the law, a director of the corporation could not make any secret profit in the matter of obtaining such subscriptions; and especially that Mr. Briggs, who was both president and a director, by reason of his consequent relation to those who were to subscribe for the stock, was by the law absolutely precluded from the enjoyment of secret profits as the result of what was practically a partnership agreement with Pratt & Grigsby in the matter of their contract with plaintiff corporation. That he gave up another position the better to enable him to carry out his undertaking with Pratt & Grigsby, that Pratt & Grigsby could not have completed their contract with plaintiff corporation without his aid, that it was to the best interests of plaintiff corporation that Pratt & Grigsby should fully perform their contract, that the services, etc., of Mr. Briggs were reasonably worth forty thousand five hundred dollars, appears to us to be absolutely immaterial in view of what is declared in the former opinion to be the law applicable to such a situation as is here presented. The mere fact that it was known that he was actively co-operating in the effort to obtain the necessary subscriptions, giving his entire time thereto and even expending sums of money for traveling and other expenses, is likewise immaterial. The important thing is that nobody knew that there was an agreement of partnership between him and Pratt & Grigsby, under which he, the president and a director of the plaintiff corporation, was to share, and did share, in the profits of the contract between them and the corporation. There was never any disclosure as to this, and the circumstances were such, in view of what was said in the former appeal, that in the absence of a full and fair disclosure he could not participate in the profits made by Pratt & Grigsby under their contract, and that to the extent to which he did participate by reason of his secret agreement with them, he was receiving "secret profits" which must be held to belong to the corporation.

It is to be noted that we have not in this case any basis for the application of authorities to the effect that even if there be a violation of the obligation resting on an officer of a corporation, nevertheless the corporation must pay for the value of the thing which it receives. As was said in the former opinion, these cases have no application here, the case being one in which ''the plaintiff corporation is simply seeking to recover such secret profits as were made by one of its officers in a transaction wherein he was forbidden to make any such secret profits, and which profits, in view of the rules we have discussed, belong to the corporation.''

We cannot regard as material in this inquiry the value to Pratt & Grigsby, in the carrying out of their contract, of the co-operation of Mr. Briggs, the reasonable value of his time and service in performing his part of his agreement with them, or even the amounts of money expended by him for traveling and other expenses in so performing. As to expenditures, there is only the most general sort of allegation without any statement of amount, and learned counsel for appellant do not strongly contend for any real distinction between moneys advanced and services rendered. The real contention is that there is no ''secret profit'' within the meaning of the rule applicable here where the services given for the money received were reasonably worth the amount received and the amount was honestly and fairly earned. We think there can be no question but that any moneys received by Mr. Briggs by virtue of his agreement with Pratt & Grigsby for a definite percentage of the net profits of their contract with the corporation, in consideration of his proposed active personal co-operation in the matter of carrying out such contract, were ''secret profits'' within the meaning of the rule, regardless of the value of his services, etc., given in carrying out his agreement with them.

As substantially already said, we think that the claims of learned counsel for appellant were substantially disposed of by what was said on the former appeal.

The judgment is affirmed.

Shaw, J., Sloss, J., Henshaw, J., Melvin, J., and Lawlor, J., concurred.