[Civ. No. S. C. 29.    Second Appellate District, Division One.—April 19, 1937.]

ANGELUS SECURITIES CORPORATION (a Corporation), Respondent, v. BERTRAND L. BALL, Appellant.

Oliver O. Clark for Appellant.

John Perry Wood and Stanley Arndt for Respondent.

WHITE, J., *pro tem.*—We have this day filed an opinion in case No. S. C. 37 (*ante,* p. 423 [67 Pac. (2d) 152]), which involves questions presented in litigation out of which this appeal arises. While reference may be had to that case for a more complete statement of the facts, those involved in the appeal now before us, in brief, are as follows:

On April 15, 1931, and for several months prior thereto, respondent corporation had as its board of directors Messrs. Luton, Crowe, Woodward, Ball, Harriss, Seamans, Breslin and Cruickshank. Of these, Luton was president, Crowe, Woodward and Harriss were vice-presidents, Cruickshank was secretary-treasurer, and Harriss was general manager. For some time prior to the date last mentioned, considerable dissension existed between Crowe, Woodward, Harriss and Ball, on the one hand, and Luton and Cruickshank on the other, regarding corporate policies. From the record it appears that directors Ball, Woodward, Crowe and Harriss were desirous of getting directors Luton and Cruickshank "out of the picture". After conferences among the first-named group, an approach was made to Luton and Cruickshank by Ball with a view to obtaining their preferred and common stock in exchange for certain trust deed securities belonging to plaintiff corporation and transferred to Ball by

438

Harriss in his capacity as vice-president of plaintiff corporation, with the understanding that if Ball obtained 470 shares of the preferred stock and 235 shares of the common stock from Luton and Cruickshank, the corporation would purchase the stock in question from Ball. It appears that, using the securities obtained from the corporation in the manner more specifically set forth in case No. S. C. 37, Ball obtained the 470 shares of preferred stock, but instead of obtaining only 235 shares of common stock, he obtained 1235 shares. Ball thereupon delivered to the corporation the aforesaid preferred stock, but turned over to the corporation only 235 shares of the 1235 shares of common stock. The remaining 1,000 shares Ball retained for himself, and some months later sold them to director Harriss for $2,500. This action was subsequently commenced by the corporation to recover from Ball the sum of $2,500, which it is alleged was a secret profit to him in the retention and sale by Ball of the 1,000 shares of common stock while acting as the agent of the corporation. Upon the trial judgment was rendered against appellant, Ball, for the sum of $2,500, and from that judgment he prosecutes this appeal.

Although the appeal comes to us on a bill of exceptions containing thirteen specifications of error, and appellant has not pointed out in his brief nor called to our attention the particular finding or findings claimed to have no support in the evidence and the particulars in which such finding is not supported by the evidence, and notwithstanding that it is not our duty to investigate the questions as to the sufficiency of the evidence, we have nevertheless read the record to determine in our own minds whether the findings are supported by substantial evidence. Assuming the sufficiency of appellant's brief in presenting the specifications urged in the bill of exceptions, this appeal presents, as suggested by appellant, three inquiries: (1) Was appellant acting in these transactions as the agent of plaintiff corporation? (2) Did appellant purchase these shares from Luton, Cruickshank, Lyon and Ferguson with the funds of the corporation? (3) Was the receipt and retention of these 1,000 shares of common stock by appellant a secret profit to him as a director of plaintiff corporation?

As to the first question, we are of the opinion that there is in the record substantial evidence warranting the trial court in finding that appellant was acting in these trans-

actions as the agent of plaintiff corporation. In fact, the witness Harriss testified: "He (Ball) told us he felt that Dr. Luton and Mr. Cruickshank, with Mr. Ball's coming in there, were unnecessary expense, and that it would be better to acquire their stock *to get them out of the picture, which we agreed,* but, *he did not think it would be possible for the company direct to make a trade with them even if they had that in mind. He felt he could do that himself."* This same witness further testified: *"Mr. Ball said he thought it would not be practical for the corporation to buy directly—maybe that isn't the word—that he thought there might be some feeling between Mr. Cruickshank and Dr. Luton and Mr. Woodward, Mr. Crowe, Mr. Ball and myself, that it would not be possible to work out that situation direct."* Again, we have the witness Harriss detailing a conversation he had with appellant, wherein the witness testified: "During the course of these conversations Mr. Ball, asking for the list of securities, said in substance: *'I don't think it would be possible for the company directly to make this deal. I feel I could do it myself, however.'"*

The record also indicates that when appellant filed his income tax return, in answering the question therein contained, "state how property was acquired", appellant wrote the words, *"For cash or in payment of services rendered by myself."* There was no claim made in appellant's income tax return that he had purchased certain assets from respondent corporation and resold them for a profit of $2,500. This, and other evidence which we find in the record, amply supports the finding of the trial court that appellant was the agent of the corporation.

The directors of a corporation hold a fiduciary relation to the stockholders, and have been entrusted by them with the management of the corporate property for the common benefit and advantage of each and every stockholder; and by their acceptance of this office they preclude themselves from doing any act or engaging in any transaction in which their private interest will conflict with the duty they owe to the stockholders and from making use of their power or the corporate property for their own advantage. (*Wickersham* v. *Crittenden,* 93 Cal. 17, 29 [288 Pac. 788]; *Schwab* v. *Schwab-Wilson Machine Corp.,* 13 Cal. App. (2d) 1 [55 Pac. (2d) 1268]; *Kahle* v. *Stephens,* 214 Cal. 89, 93 [4 Pac. (2d) 145].) Where a director does not attempt to unite his

personal and representative character in the same transaction, and where his official connection is not an essential part of the transaction, then the transaction between a corporation and a director is not voidable, if in good faith and free from fraud; but such transactions are subject to rigid scrutiny, and there must be a full disclosure, and the director's actions must be open and aboveboard and taken in good faith. The director must make a full disclosure of all pertinent facts or the transaction is voidable. (*Lomita Land & Water Co.* v. *Robinson,* 154 Cal. 36, 45 [97 Pac. 10, 18 L. R. A. (N. S.) 1106]; *Victor Oil Co.* v. *Drum,* 184 Cal. 226, 233 [193 Pac. 243]; *Western States Life Ins. Co.* v. *Lockwood,* 166 Cal. 185 [135 Pac. 496]; Id., 173 Cal. 734 [161 Pac. 498].) The record impresses us with the fact that while directors Woodward and Crowe knew that Ball was purchasing all of the stock of Luton, Cruickshank et al., they thought that Ball was paying cash for the 1,000 shares. The trial court evidently concluded, and he was justified in so doing, that they did not know that Ball was receiving the 1,000 shares as a profit on the transaction.

The second question, as to whether appellant purchased the 1,000 shares of common stock with the funds of the respondent corporation, is best answered with a quotation from appellant's testimony in the trial court, as follows: "As far as this 1,000 shares of stock of Angelus Securities Corporation is concerned, I gave no money or property for it."

With reference to the third query, we are of the opinion that the trial court was justified in finding that the receipt and retention of the 1,000 shares of common stock by appellant constituted a secret profit to him as a director of plaintiff corporation, for the reason that there is in the record substantial evidence from which the court below could conclude that the entire transaction was concealed from director Breslin, who was the owner of preferred and common stock; that it was also concealed from director Seamans, who was the holder of preferred and common stock; while it further appears that though there was a board meeting on April 15, 1931, immediately following the consummation of the transaction, the matter was not brought before the board. In our opinion, under the facts of this case, there rested upon appellant, as a director of respondent corporation, the duty to inform the corporation of this transaction; and had he done

so it is apparent, in view of his own testimony that he gave neither money nor property for the stock in question, that the board of directors, stockholders and creditors would have been apprised of the fact that the 1,000 shares of stock were purchased with securities belonging to the corporation, and could have utilized the $2,500 profit obtained from the sale thereof to liquidate in part the outstanding indebtedness of the corporation. However, with a duty upon appellant as a director to speak, he chose to remain silent.

. For the foregoing reasons, the judgment appealed from should be, and it is, affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 17, 1937.