[No. D020439. Fourth Dist., Div. One. Sept. 10, 1996.]

DONALD F. SAMMIS, Plaintiff and Appellant, v.
ROBERT STAFFORD et al., Defendants and Respondents.

DONALD F. SAMMIS, Plaintiff and Appellant, v.
FABRIC AND STRUCTURE TECNOLOGY, INC., et al., Defendants and
Respondents.

**[Opinion certified for partial publication.¹]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Hoyt E. Hart II for Plaintiff and Appellant.

Jonathan E. Van Cleave for Defendants and Respondents.

## OPINION

**HALLER, J.**—Plaintiff Donald F. Sammis and defendant Robert Stafford formed a corporation in 1984. Approximately five years later, Sammis brought two actions against Stafford. First, he brought a shareholder's derivative suit, alleging Stafford committed misconduct while he was president and majority shareholder. Second, he brought his own individual action, alleging Stafford committed fraud in inducing Sammis to transfer his majority shareholder position to Stafford. The actions were consolidated for trial; the parties waived jury.

After trial, the court entered judgment in Stafford's favor on the fraud action. Sammis does not appeal from this ruling. The court entered judgment against Stafford on the shareholder's derivative action, awarding Sammis $64,801. Sammis appeals from this ruling, contending the court erred in failing to award additional damages, principally the amount of Stafford's annual salary and pension benefits from 1990 through 1992.

In the published portion of this opinion, we conclude Stafford's conduct was properly ratified under Corporations Code[2] section 310, subdivision (a)(3). In the unpublished portion of this opinion, we conclude substantial evidence supported the court's finding that Stafford proved his salary was fair and reasonable within the meaning of the code section. Accordingly, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1984, Sammis and Stafford formed Fabric and Structure Technology, Inc. (FAST), to design, manufacture, and market fabric structures. Sammis initially contributed $2,500 and Stafford contributed $2,450. Sammis thus owned 51 percent interest and Stafford owned 49 percent interest. Sammis held the majority interest because he was responsible for arranging financing and guaranteeing loans.

FAST's board of directors consisted of Sammis and Stafford. Stafford was the corporate president responsible for all aspects of the business. Although

---

[2] All further statutory references are to the Corporations Code. For convenience, we will refer to section 310, subdivision (a) as section 310(a).

Sammis was also an officer, his role was primarily limited to providing financing. Stafford received a salary. Sammis did not.

From 1984 through 1986, FAST developed patents related to fabric building structures. FAST then began manufacturing the product. By 1988, FAST owed Sammis approximately $272,500. In addition, Sammis had arranged and personally guaranteed a $300,000 line of credit for FAST.

In 1988, FAST discontinued its manufacturing operation and focused on developing patents and licensing the patents. Stafford thereafter began negotiating licensing agreements with two entities. During the negotiations with one of the entities (Canvas Specialties), Canvas's manager, Irwin Sack, told Stafford that Canvas would not enter into a license agreement unless Stafford was either the sole owner or the majority shareholder of FAST.

In response to Sack's concerns, on June 22, 1989, Sammis and Stafford executed a written agreement (entitled "Shareholders' Agreement"), in which Sammis sold 2 percent of his FAST stock to Stafford.[3] After that time, Stafford owned 51 percent of the corporation. As part of this Shareholders' Agreement, the parties agreed that if any employee was paid more than $30,000, FAST would enter into an employment contract with the employee and board approval would be required for the contract.

FAST thereafter entered into licensing agreements with Canvas and another entity. As a result of these agreements, FAST received approximately $725,000. FAST used these funds to retire corporate debt and to repay obligations owing to Sammis.

In approximately May 1990, Sammis failed to return Stafford's telephone calls and refused to countersign checks. Concerned by Sammis's refusal to cooperate, Stafford consulted FAST's attorney, Michael Shea. Shea suggested that Stafford call a shareholders' meeting. Shea said that if Sammis failed to attend the meeting, Stafford could reduce the board of directors to one, elect himself to that position, and then eliminate the requirement that Sammis approve FAST's expenditures.

Relying on this advice, Stafford noticed a shareholders' meeting for June 27, 1990. Sammis received the notice, but did not attend.[4] At the June 27 meeting, Stafford created a board of one and elected himself as the sole

[3]This June 1989 agreement was the basis of Sammis's fraud action. Because Sammis does not appeal from the court's ruling on his fraud claim, we have omitted many of the facts underlying that claim.

[4]Although the notice was received at Sammis's office, Sammis did not personally know about the meeting because of inadvertent staff error.

board member. Stafford then took action on several matters, including signing an employment agreement authorizing a salary of up to $150,000 for himself, establishing a pension for himself, and hiring his wife and paying her both salary and a pension. Before 1989, Stafford was paid less than $50,000 annually. In 1989, he was paid approximately $86,000. After Stafford elected himself sole director, he paid himself approximately $118,000 in 1990, $146,000 in 1991, and $127,000 in 1992.

In June 1991, Sammis learned of Stafford's actions. After protracted negotiations, the parties agreed to reconstitute the board to five directors. Stafford elected himself, his wife, and his sister. Sammis elected himself and his son.

Six months later, on January 27, 1992, a board meeting was held, at which a majority of the board (Stafford, his wife, and his sister) voted to ratify all of Stafford's actions while he was the sole director.

In December 1992, Sammis bought all of Stafford's shares in FAST for $156,000.[5]

Sammis filed two actions arising from the foregoing events. First, Sammis, on behalf of the corporation, brought a shareholder's derivative suit alleging Stafford committed misconduct while he was majority shareholder in that he (a) paid himself excessive salary and benefits and (b) diverted corporate funds for personal uses. Second, Sammis filed an action against Stafford, alleging that in 1989 Stafford fraudulently induced Sammis to transfer 2 percent of FAST stock to Stafford and falsely promised he would limit his salary to $30,000. The two cases were consolidated.

After a 10-day trial, the court issued a written statement of decision. The court explained it was ruling in Sammis's favor on the shareholder's derivative suit because Stafford improperly diverted $64,801 of corporate funds for his personal use. The court determined, however, that Stafford's salary and pension benefits were "neither excessive nor inappropriate" and thus did not award Sammis any damages in connection with Stafford's salary. The court additionally ruled in Stafford's favor on Sammis's fraud action, finding Sammis failed to prove he was fraudulently induced to transfer his majority interest to Stafford or that Stafford had agreed to limit his salary to $30,000. The court thus entered a $64,801 judgment against Stafford on the shareholder's derivative suit and entered judgment in Stafford's favor on the fraud suit.

---

[5]Sammis presented evidence at trial that during 1991 Stafford became involved with two other fabric structure businesses. At trial, Sammis did not separately assert Stafford's involvement in these businesses constituted an improper taking of corporate opportunities.

## DISCUSSION

### I. *Section 310(a)(3)*

 Sammis challenges the court's ruling that Stafford's salary and pension benefits were not a misappropriation of corporate funds. Relying on section 310(a), Sammis contends Stafford's conduct after 1989 was not properly authorized and therefore the court erred in failing to determine Stafford must return his salary and benefits received from the corporation during that time.

Section 310 governs situations where a matter before a board of directors is one in which a director has an interest. Section 310(a) provides that a vote on the matter is not void or voidable because the interested director is present at the board meeting if one of three alternatives are satisfied:

"(1) The material facts as to the transaction and as to such director's interest are fully disclosed or known to the shareholders and such contract or transaction is approved by the shareholders (Section 153) in good faith, with the shares owned by the interested director or directors not being entitled to vote thereon, or

"(2) The material facts as to the transaction and as to such director's interest are fully disclosed or known to the board or committee, and the board or committee authorizes, approves or ratifies the contract or transaction in good faith by a vote sufficient without counting the vote of the interested director or directors and the contract or transaction is just and reasonable as to the corporation at the time it is authorized, approved, or ratified, or

"(3) *As to contracts or transactions not approved as provided in paragraph (1) or (2) of this subdivision, the person asserting the validity of the contract or transaction sustains the burden of proving that the contract or transaction was just and reasonable as to the corporation at the time it was authorized, approved or ratified.*" (§ 310 (a)(1)-(3), italics added.)

At trial, Stafford acknowledged that a one-person board is not proper under California law (see § 212) and therefore his actions from June 1990 through January 1992 were not initially authorized. Stafford, however, relied on the January 27, 1992, ratification vote (see *ante*, at p. 1940) to argue that his 1990-1992 conduct as director was nonetheless valid because the conduct was later ratified by a majority of a five-person board. Stafford recognized such board approval did not fall within the first two statutory alternatives

(§ 310(a)(1) or § 310(a)(2)) because his vote was necessary to obtain a majority to approve the resolution. Stafford maintained, however, that the approval was proper as to section 310(a)(3), italicized above.

In its statement of decision, the trial court stated it did "not find that [Stafford] misapplied any funds of the corporation with regard to the salary paid to himself." Although the court did not specifically identify section 310(a), Sammis did not raise any objections to the statement of decision. We therefore are required to presume the trial court made all findings necessary to support the judgment. (Code Civ. Proc., § 634; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134 [275 Cal.Rptr. 797, 800 P.2d 1227]; see also *Sperber* v. *Robinson* (1994) 26 Cal.App.4th 736, 744-745 [31 Cal.Rptr.2d 659].) Accordingly, we interpret the court's statement to mean the court found Stafford proved his salary was "just and reasonable" within the meaning of section 310(a)(3).

Sammis contends section 310(a) is inapplicable because Stafford's salary was not an "interested director" transaction, but rather it was an "ultra vires" act. ■ " '[U]ltra vires' refers to an act which is beyond the powers conferred upon a corporation by its charter or by the laws of the state of incorporation . . . ." (*Marsili* v. *Pacific Gas & Elec. Co.* (1975) 51 Cal.App.3d 313, 322 [124 Cal.Rptr. 313, 79 A.L.R.3d 477].) A corporation may recover damages when a director engages in ultra vires activities, and the director may not defend such action by alleging ratification. (See § 208, subd. (a); *Michaels* v. *Pacific Soft Water Laundry* (1930) 104 Cal.App. 349, 363 [286 P. 165], disapproved on other grounds in *Mary Pickford Co.* v. *Bayly Bros., Inc.* (1939) 12 Cal.2d 501, 521-522 [86 P.2d 102].) If, however, the director's act was within the corporate powers, but was performed without authority or in an unauthorized manner, the act is not ultra vires. (See *McDermott* v. *Bear Film Co.* (1963) 219 Cal.App.2d 607, 610-611 [33 Cal.Rptr. 486]; *Michaels* v. *Pacific Soft Water Laundry, supra,* 104 Cal.App. at p. 363.)

■ There is no evidence in the record that Stafford acted beyond the purpose or power of the corporation. Rather, Stafford's acts were within the scope of FAST's corporate powers, but were not validly authorized by a properly constituted board of directors. Thus, Stafford's acts were not ultra vires and therefore were subject to later ratification.

■ Sammis alternatively argues Stafford's conduct was not properly ratified because as a matter of law section 310(a)(3) applies only where the board "authorized, approved or ratified" the action, *without* the vote of the interested director.

We are required to interpret a statute according to its plain meaning. (See *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) In so doing, we must consider the language in context of the entire statutory scheme. (*Ibid.*)

Applying these principles, we conclude the January 27, 1992, ratification vote could qualify as a ratification within the meaning of section 310(a)(3). Section 310(a)(3) applies "to contracts or transactions *not* approved as provided in paragraph (1) or (2) of this subdivision . . . ." (§ 310(a)(3), italics added; see *Gaillard* v. *Natomas Co.* (1989) 208 Cal.App.3d 1250, 1272-1273 [256 Cal.Rptr. 702]; *Pece* v. *Tama Trading Co.* (1937) 22 Cal.App.2d 219, 223 [70 P.2d 652] [interpreting a substantially similar predecessor statute].)[6] In other words, section 310(a)(3) addresses the situation where the approval was based on a vote by the interested director.

Considering section 310(a) as a whole, this interpretation makes sense. If section 310(a)(3)'s phrase "authorized, approved or ratified" was construed to mean only those approvals made without the interested director's vote, then section 310(a)(3) would be unnecessary. Section 310(a)(2) and section 310(a)(3) both permit interested director transactions where the board of directors approves the transaction. The sections differ, however, depending on whether the approval was obtained with or without the interested director's vote and whether there was full disclosure. Where a *dis*interested majority approves the transactions and there was full disclosure, section 310(a)(2) applies, and the burden of proof is on the person challenging the transaction. (See 1 Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1995) § 103.01, p. 6-25.) Where, however, the approval was not obtained from a disinterested board vote, section 310(a)(3) applies and requires the person seeking to uphold the transaction to prove it was "just and reasonable" to the corporation. (*Ibid.*)

Section 310's legislative committee comment, which discusses each of the three "independent procedures for the validation of 'interested' transactions," supports our view. (See legis. committee com., 23E West's Ann. Corp. Code (1990 ed.) § 310, p. 155.) In referring to sections 310(a)(1) and 310(a)(2), the comment makes clear that the specified "approval" refers to the requirement that the vote be without the vote of the interested director. By contrast, with respect to section 310(a)(3), the comment does not mention

---

[6]Although *Pece* recognized the general principle that an interested director vote on a salary may be valid if the director proves the salary was just and reasonable, *Pece* is factually distinguishable since in that case the trial court found the director's salary was *not* just and reasonable when it was authorized. (*Pece* v. *Tama Trading Co., supra*, 22 Cal.App.2d at p. 222.)

the disinterested vote requirement and instead states, "a transaction may be validated if the person asserting its validity sustains the burden of proving that the transaction was just and reasonable as to the corporation at the time it was approved." (Legis. committee com., *op. cit. supra*, at p. 155.)

Our conclusion is further supported by a respected authority on corporations law. (Friedman, Cal. Practice Guide: Corporations 2 (The Rutter Group 1996) ¶ 6:223.2, p. 6-43 (Friedman).) Citing section 310(a)*(3)*, Friedman states "[f]*ailure to obtain disinterested board or shareholder approval does not necessarily render an interested director contract void*. However, in such cases, the burden rests on the party seeking to *uphold* the contract . . . to prove that it was 'just and reasonable' to the corporation at the time it was authorized or entered into. . . ." (Friedman, *op. cit. supra*, ¶ 6:297, p. 6-55, first italics added.)[7]

To support his argument, Sammis relies exclusively on a section of the equally well-regarded treatise, Marsh's California Corporation Law. (2 Marsh, Marsh's Cal. Corp. Law (3d ed. 1996 supp.) § 11.8, pp. 836-840 (Marsh).) In discussing the interested director voting issue, Marsh opines that the Legislature did not intend section 310(a)(3) to apply to transactions involving a " 'secret profit' made by a director or officer" such as when the "director . . . concealed his interest in a transaction in order to secure approval . . . ." (Marsh, *op. cit. supra*, at p. 837.) Marsh relies on a line of older cases, holding that a director cannot assert a reasonableness defense when the director recovered "secret profits" (see *Western States Life Ins. Co.* v. *Lockwood* (1916) 173 Cal. 734, 739 [161 P. 498]) or when the transaction "amounted to a wilful and deliberate misappropriation of the funds . . . in effect . . . an embezzlement . . . ." (See *Dean* v. *Shingle* (1926) 198 Cal. 652, 658 [246 P. 1049, 46 A.L.R. 1156]; see also *Angelus Securities Corp.* v. *Ball* (1937) 20 Cal.App.2d 436, 440 [67 P.2d 158] ["[t]he director must make a full disclosure of all pertinent facts or the transaction is voidable"]; *Tevis* v. *Beigel* (1959) 174 Cal.App.2d 90, 98 [344 P.2d 360].)

Marsh's comments are inapplicable here. The case before us is not a "secret profit" or "embezzlement" type of case. Viewing the evidence in the light most favorable to Stafford, the evidence did not show Stafford concealed his salary or that the salary amounted to a willful and deliberate

---

[7]In another section, Friedman cites section 310(a)(3), as support for the proposition that "[t]he director's vote on a contract or transaction in which he or she has a financial interest does *not* invalidate the board action. *The vote counts, if necessary, for approval of the transaction.*" (Friedman, *op. cit. supra*, ¶ 6:223.2, p. 6-43, second italics added.) Friedman explains that "if the transaction is later challenged, it will be set aside unless the interested director (or other person asserting the validity of the transaction) can prove it was 'just and reasonable' to the corporation." (*Id.*, ¶ 6.223.3, p. 6-43.)

misappropriation of corporate funds. The trial court's findings support a conclusion that Stafford, who was not experienced in corporate matters, reasonably relied on his attorney that a one-person board was appropriate, and that Stafford made no effort to conceal his salary from Sammis or from the board when the ratification occurred.

Moreover, in the section relied upon by Sammis, Marsh observes: "The intent of [section 310(a)(3)] is that where the approval of the board cannot be obtained because a majority of the directors are interested or the vote of a majority of a quorum cannot be obtained because the interested director's vote is not counted, and the matter is not submitted to the shareholders, nevertheless the director is entitled to a defense on the basis that the transaction was just and reasonable as to the corporation, although he has the burden of proving that contention." (Marsh, *op. cit. supra*, at p. 837.) Here, when the ratification occurred, a majority of the board consisted of interested directors—Stafford, his wife, and his sister. Accordingly, even under Marsh's view, this case falls within section 310(a)(3).

Finally, we reject Sammis's reliance on his expert's opinion that the January 27, 1992, ratification was ineffective because "it was done in a blanket fashion, not a separate consideration of each item of conduct . . . ." Sammis fails to direct us to any statutory or decisional law prohibiting a general ratification as occurred here.

## II. *Sufficiency of the Evidence\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

Judgment affirmed.

Kremer, P. J., and Nares, J., concurred.

---

*See footnote 1, *ante*, page 1935.