Filed 11/29/22  Stein v. Kiloh CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DANIEL STEIN et al.,<br><br>　　Plaintiffs and Respondents,<br><br>　　v.<br><br>JERRED KILOH,<br><br>　　Defendant and Appellant. | B314960<br><br>(Los Angeles County<br>Super. Ct.<br>No. 20STCP02373) |

APPEAL from an amended judgment of the Superior Court of Los Angeles County, Yolanda Orozco, Judge.  Affirmed.

The Freedman Firm and Michael G. Freedman for Defendant and Appellant.

Cohen Williams, Marc S. Williams, and Reuven L. Cohen for Plaintiffs and Respondents.

An arbitrator ruled plaintiffs and respondents Daniel Stein (Stein) and Phil McGarr (McGarr) were entitled, pursuant to the terms of a management transfer agreement with defendant and appellant Jerred Kiloh (Kiloh), to be appointed to the board of directors of a nonprofit mutual benefit corporation that operated a marijuana dispensary. After the arbitration award was confirmed by the trial court, Stein and McGarr successfully moved to amend the resulting judgment to order their appointment to the board. We are principally asked to decide whether the court had jurisdiction to enter the amended judgment even though the corporation (as then constituted without Stein and McGarr) was not a party to the proceedings and the motion to amend was brought well after service of the award.

## I. BACKGROUND

### A.    *The Acquisition and Management of Higher Path*[1]

Kiloh and McGarr, individually and jointly, worked on various cannabis-related business ventures in northern California and were interested in acquiring a medical dispensary in southern California. Stein managed and operated Higher Path, a medical marijuana dispensary in Los Angeles, under the auspices of The Higher Path Holistic Care Inc. (HP Holistic), a nonprofit mutual benefit corporation of which Stein was the sole manager and director. In the summer of 2013, the three men

---

[1]    Facts relating to the parties' business dealings and the arbitration of their disputes are drawn from the 2019 arbitration award.

2

entered into discussions related to Kiloh and McGarr's acquisition of Stein's business.

In January 2014, Stein, Kiloh, and McGarr signed a Management Transfer Agreement (MTA) for HP Holistic. Under the terms of the MTA, Stein agreed to appoint Kiloh and McGarr as additional directors of HP Holistic and transfer all management rights to them, along with a 75 percent share of the business. In return, Kiloh and McGarr agreed to pay Stein $500,000. The parties also agreed that Stein, who retained a 25 percent interest in the business, would remain on the board of HP Holistic "and shall not be removed as a director without cause." The parties contracted further that any dispute between them would be resolved by mediation and, if that proved unsuccessful, by binding and final arbitration.

Shortly after signing the MTA, Kiloh and McGarr learned Stein had not been candid in his disclosures about pending litigation against the dispensary. In order to mitigate any adverse consequences from the litigation, the parties agreed to replace HP Holistic with a new nonprofit mutual benefit corporation, Higher Path Patients Association (HP Patients), and to transfer all business operations to that entity.

Over time, relations between the three business partners became strained. Although Kiloh and McGarr contributed equally to the money paid to Stein for the acquisition of Higher Path, they did not share equally in the management of the business. Kiloh, who devoted an "extraordinary" amount of time to managing Higher Path's operations by commuting from his home in northern California to Los Angeles, received no assistance from either McGarr or Stein. As Kiloh became increasingly frustrated and angry with McGarr for the latter's

3

failure to participate in the management of the dispensary, Kiloh demanded an ever-increasing proportion of their shared ownership interest. In addition, because Stein lacked the money to pay for the settlement of litigation pending against Higher Path at the time of the acquisition, and because McGarr did not contribute to the settlement, Kiloh personally borrowed money to pay the settlement on Stein's behalf. Eventually, McGarr and Stein entered into discussions about coordinating legal action against Kiloh.

### B. The Arbitration

In 2018, McGarr and Stein filed a joint demand for arbitration against Kiloh. The gist of their demand was that Kiloh had breached various contractual duties, including the duty under the MTA to name them to the board of HP Patients. Kiloh disputed his partners' claims (without challenging the validity of the MTA), but he did not seek any affirmative relief in the arbitration.

Corporate filings from the time of the arbitration identified Kiloh as the only director and officer of HP Patients, a fact Kiloh affirmed at his deposition during the arbitration. Although the relief sought by McGarr and Stein in the arbitration would reconstitute HP Patients' board and provide them with access to the corporation's books and records, there is no indication in the award (or in any other part of the appellate record) that Kiloh ever argued during the arbitration that HP Patients should be made a party.

The arbitrator ruled in Kiloh's favor on a number of claims, but the arbitrator found McGarr and Stein had a right to be directors of HP Patients because the MTA established a "business

4

framework" for the operation of the dispensary.[2]  The arbitrator reasoned that because the MTA provided McGarr and Stein would be directors of HP Holistic, the "corporate vehicle" for the management of Higher Path's operation, and because the parties agreed to replace HP Holistic with HP Patients, their right to a seat on the board continued under the successor corporation.

The arbitrator's analysis of the claims presented for resolution stated that the arbitration award "included" an order that McGarr and Stein "shall" be appointed to HP Patients' board.  The disposition portion of the arbitral award was phrased differently, however.  It stated only that both men were "entitled" to be appointed to HP Patients' board.  The arbitrator ordered further that, upon becoming directors, McGarr and Stein "shall be given access to the books and records of HP Patients."[3]  The award was served on the parties on September 12, 2019.

---

[2]  The arbitrator also agreed McGarr was entitled to an order appointing him to the board of two other entities, Valley Pinnacle L.L.C. (Valley Pinnacle) and JPHP Management Inc. (JPHP), which were formed to control his and Kiloh's shared interest in Higher Path's business.

[3]  Although the arbitrator, with reference to various exhibits, observed that Higher Path was "fully licensed" by the State of California and "fully permitted" by the City of Los Angeles as a retailer and distributor of adult-use and medicinal cannabis, he did not address what effect a change in the composition of HP Patients' board would have on the dispensary's licenses and permits.

5

*C. Post-Arbitration Proceedings and Corporate Maneuvering*

*1. The parties seek confirmation of the award*

Ten months after service of the arbitration award, McGarr and Stein petitioned the trial court to confirm the award. Kiloh did not oppose confirmation or move to vacate or amend the award. To the contrary, he urged the court to confirm the award in "precise conformity" with its terms. In particular, he pressed the court to enter a judgment which "mirror[ed] exactly what the arbitrator awarded in his Disposition."[4] In their reply, McGarr and Stein "agree[d]" with Kiloh and asked the court to "confirm the Award in precise conformity with the Award as written by the Arbitrator."

The trial court granted the petition to confirm the arbitration award. The court duly entered judgment "in conformity" with the award and specifically referenced the award's disposition. No appeal was taken from that judgment.

*2. The parties' contending corporate filings*

Following entry of judgment, McGarr and Stein, through their counsel, noticed a special meeting of HP Patients' board. The notice stated that, pursuant to the arbitration award and resulting judgment, McGarr, Stein, and Kiloh were "the sole members" of HP Patients' board.

In advance of the special meeting, HP Patients' corporate counsel advised McGarr and Stein's attorney that she was not

---

[4] Kiloh did not make reference to HP Patients' absence as a party or argue the corporation should be joined as a party to the judgment.

6

aware that either man had been appointed to the board and disputed whether the notice of the special meeting was proper. In subsequent correspondence, HP Patients' counsel claimed the judgment confirming the arbitration award was of "no legal consequence" to her client because the corporation was not a party to the judgment or the underlying arbitration.

In February 2021, in Kiloh's absence, McGarr and Stein held the previously noticed special board meeting, during which they approved amended and restated articles of incorporation converting HP Patients from a non-profit mutual benefit corporation to a for-profit corporation. In addition, McGarr and Stein removed Kiloh from his officer positions and appointed themselves in his place (McGarr as president and chief executive officer, and Stein as chief financial officer and secretary). These decisions were later memorialized in a statement of information filed with California's Secretary of State.

The following month, HP Patients' counsel, believing McGarr and Stein's actions at the special board meeting were contrary to "basic corporate governance" because neither man had been elected to the board, attempted to "unwind" the actions taken at the meeting by filing a new statement of information with the Secretary of State, which identified Kiloh as chief executive officer and secretary and which did not mention either McGarr or Stein.

### 3. McGarr and Stein's motion for contempt

In April 2021, McGarr and Stein moved the trial court to hold Kiloh and HP Patients' counsel in contempt for "flout[ing]" the judgment by, among other things, attempting to "undo actions taken by McGarr and Stein as directors of HP Patients."

7

In opposition, Kiloh echoed the argument previously raised by HP Patients' counsel that the judgment was "void" as to HP Patients because it was not a party to either the arbitration or the judgment. Kiloh specifically argued the corporation's absence deprived the trial court of jurisdiction to make a contempt finding. Although Kiloh did not expressly argue HP Patients had been a non-joined indispensable party to the arbitration and its subsequent confirmation, his opposition did include a citation to the statute governing the compulsory joinder of absent parties (Code Civ. Proc.,[5] § 389) and a case discussing joinder of indispensable parties.

McGarr and Stein argued the judgment was not void. In their view, "[t]he arbitration sought to enforce an agreement between McGarr, Stein, and Kiloh—the founders of HP Patients—which agreement predated the formation of the corporation. HP Patients was not a party to the agreement; it has no rights under the agreement; it was not a signatory to the arbitration clause; [and] it has no independent interest in the dispute among its founders over which of them have a right to serve on its board." McGarr and Stein further asserted that "none of HP Patients' rights have been adjudicated or prejudiced." They argued Kiloh waived any objection to HP Patients' absence in the proceedings before the trial court because Kiloh never raised an objection on that ground to either the award's confirmation or the resulting judgment even though "Kiloh ha[d] at all times claimed to be the sole member, director and officer" of the corporation. Pursuant to section 187, McGarr

---

[5]     Undesignated statutory references that follow are to the Code of Civil Procedure.

8

and Stein also requested the trial court "issue an order or otherwise modify the Judgment . . . to leave no doubt that [they] are currently lawful members of the board of directors of HP Patients" and had been since entry of judgment.

At the initial hearing on the contempt motion, the trial court requested supplemental briefing from the parties regarding its authority to issue a contempt order under the circumstances. After receiving the parties' submissions and hearing additional oral argument, the court denied the motion, finding contempt was the "wrong vehicle by which to achieve the fruits of the arbital award." The court believed it was "clear" from the language of its disposition that the award contemplated Kiloh was required to take certain actions that he had not taken. The court, however, found Kiloh's "obligations [we]re not spelled out in the Judgment itself such that a contempt citation would lie." The court stated it would not amend the judgment because McGarr and Stein "filed a motion seeking an ultimate finding of contempt," but the court suggested they file a motion to amend the judgment if they believe they were entitled to relief under section 187.

### 4. *McGarr and Stein's motion to amend the judgment*

Just over a week later, McGarr and Stein filed a motion to amend the judgment pursuant to section 187. They asked the trial court to "'spell out'" the relief contemplated in the arbitral award in an amended judgment, namely, a judicial declaration that they are appointed as directors of HP Patients and an order requiring Kiloh to add them to the board and to give them access

9

to all books and records of HP Patients.[6]  Such an amendment and order, they argued, would "effectuate the clear intent" of the arbitral award.

Kiloh opposed the motion and argued the trial court lacked jurisdiction to amend the judgment because HP Patients was not a party to the arbitration or to the subsequent judgment.  He argued the proposed amended judgment would violate HP Patients' due process rights as it was a "stranger" to the judgment.

In support of his argument, Kiloh cited to section 389 and case law addressing the joinder of indispensable parties, but, once again, he did so with no real elaboration.  Kiloh further argued that even if the court had jurisdiction, it could not appoint Stein and McGarr as directors because such an action would "contravene the voting rights of HP PATIENTS' thousands of members."[7]

In their reply, McGarr and Stein did not address whether HP Patients was an indispensable party; instead, they implicitly

---

[6]  McGarr and Stein also requested the trial court to order Kiloh to file a new statement of information with the Secretary of State.

[7]  In a supporting declaration, Kiloh attached the following documents:  a file-stamped copy of HP Patients' articles of incorporation, an unsigned copy of the corporation's bylaws, and an unsigned copy of minutes from an April 8, 2014, board meeting during which Kiloh and Stein purportedly voted to adopt the bylaws.  In addition, Kiloh declared he had reviewed and searched HP Patients' membership roster, which listed more than 10,000 members, and did not find either McGarr or Stein's names.

suggested it was not by contending the arbitration was based on the parties' obligations under the MTA, an agreement to which neither HP Patients nor its predecessor was a party. McGarr and Stein also maintained Kiloh's argument about HP Patient's absence was untimely because he failed to raise the necessity of the corporation's presence either during the arbitration or during the proceedings to confirm the arbitration award. As for the trial court's purported inability to appoint them as directors due to HP Patients' bylaws, McGarr and Stein argued Kiloh was attempting to relitigate issues already raised and resolved during the arbitration.

The trial court held a hearing on the motion to amend the judgment in August 2021 and granted the motion in principal part.[8] Because the arbitration award used the word "shall" when discussing McGarr and Stein's appointment to the board, the court found the requested amendment was "not doing anything other than aligning the judgment with the [award]." Accordingly, the court stated it would amend the judgment "to reflect that [McGarr and Stein] must be added as directors and granted access to the books and records" of HP Patients.

In reaching its decision, the trial court acknowledged Kiloh's argument about HP Patient's absence but rejected it as irrelevant. The court found Kiloh's position was "not well taken," because the proposed amended judgment did "nothing more than [what] the Arbitration Award required, i.e., enforcement of the [MTA] entered into [by the parties] as individuals." As the court

---

[8] The trial court declined to order Kiloh to file a new statement of information with the Secretary of State.

11

observed at the hearing, "[HP Patients] didn't even exist at the time the [MTA] was entered into . . . ."

Later that same month, the trial court issued an amended judgment, which, in pertinent part, provides as follows: "IT [IS] HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that McGarr and Stein are hereby appointed and confirmed as members of the board of directors of HP Patients, removable only for cause, joining Kiloh as the three and only directors of HP Patients . . . and that no further action of any person, body or entity is required for McGarr and Stein to lawfully hold the position of director of HP Patients . . . ." The amended judgment further ordered Kiloh to "add McGarr and Stein to the board of directors of HP Patients" and to "[r]efrain from taking any action or deliberate inaction . . . to circumvent, frustrate, prevent or impair the rights of McGarr and Stein to serve as members of the board of directors of HP Patients . . . ." In addition, the amended judgment ordered Kiloh to provide McGarr and Stein with access to all books and records of HP Patients. The judgment as amended provides that McGarr and Stein's appointment to the board and their access to HP Patients' corporate records was to be accomplished by September 10, 2021.

## II. DISCUSSION

Kiloh now advances the argument that, at best, was only hinted at in the trial court: the amended judgment is legally infirm because HP Patients is an indispensable party that was not joined. The failure to adequately present the issue below is alone enough to reject this asserted ground for reversal on appeal. But even on the merits, Kiloh's argument suffers from a fatally incorrect assumption: it assumes HP Patients as it existed

12

prior to the amended judgment was correctly constituted and, thus, could properly participate as a party in the litigation if joined. But the arbitration award—which Kiloh did not contest and indeed urged the trial court to confirm—found the exact opposite, i.e., that HP Patients had not been properly constituted since its inception because it did not have Stein and McGarr as directors. Because that finding was and is uncontested (even after confirmation of the arbitration award, which was not appealed), there can be no error in failing to join HP Patients as a party before the amended judgment was entered—any position HP Patients may have taken in the litigation would have necessarily been unauthorized and appropriately disregarded.

Kiloh's remaining arguments for reversal are also unavailing. The amendments to the judgment are clarifying, substantive changes that are not subject to the 100-day time limit for correcting defects in the form of an arbitration award. In addition, Kiloh forfeited the argument that mandating appointment of Stein and McGarr to HP Patients' board would violate HP Patients' bylaws, the Corporations Code, or various state and local cannabis regulations; these issues were within the scope of the arbitration but either never raised or—without objection—never decided.

A.    *The Belatedly Raised Indispensable Party Argument Is Unavailing*

Kiloh's argument that the trial court lacked jurisdiction to enter the amended judgment because HP Patients was an unjoined indispensable party fails for procedural reasons. Although "an objection to the non-joinder of an indispensable party may be raised by a party at any time" (*Kraus v. Willow*

13

*Park Public Golf Course* (1977) 73 Cal.App.3d 354, 370, fn. 11
(*Kraus*)), it is well established that a claim of error in failing to
join an indispensable party is "not cognizable on appeal unless it
[wa]s appropriately raised in the trial court or there is some
compelling reason of equity or policy which warrants belated
consideration." (*Jermstad v. McNelis* (1989) 210 Cal.App.3d 528,
538 [objecting party's demurrer did "not alert the trial court" to
the issue of compulsory joinder because there was "no mention" of
it]; accord, *Kraus*, *supra*, 370, fn. 11 ["where the issue of failure to
join an indispensable party is raised for the first time on appeal,
that fact is itself a factor which may be evaluated in considering
joinder. . . . [A party's] undue delay in making the motion [to join
an indispensable party] can be properly counted against him"];
*Quantification Settlement Agreement Cases* (2011) 201
Cal.App.4th 758, 861 ["The fact that the indispensable party
issue can be raised at any time does *not* mean the court cannot
consider the complaining party's diligence (or lack thereof) in
raising the issue"].) In opposing the motion to amend, Kiloh
never contended HP Patients was an indispensable party; his
fleeting reference to section 389 in his written opposition did not
suffice to alert the trial court to the issue he now urges on appeal.
Because the argument was insufficiently presented below and
because there exists no compelling reason to decide the late-
presented issue now, we reject the argument for reversal on this
ground.

Kiloh's indispensable party argument also fails, in any
event, on the merits. In light of the confirmed arbitration award
that was never challenged on appeal, it is undisputed that HP

14

Patients' board is and always has been improperly constituted.[9] And that means there could be no error in failing to join the improperly constituted corporation as a party because any position it took in the litigation would have necessarily been unauthorized by a properly constituted board of directors.  (See, e.g., *Lomes v. Hartford Financial Services Group, Inc.* (2001) 88 Cal.App.4th 127, 134 ["A corporation does not act through individual directors but, rather, through its board of directors.  [Citations.]  An individual director has no authority to take action on behalf of the corporation without the consent of the board of directors"]; see also Corp. Code, § 300; *Sammis v. Stafford* (1996) 48 Cal.App.4th 1935, 1941-1942.)

B. *The Untimely Amendment Argument Is Unavailing*

Kiloh contends the trial court lacked jurisdiction to amend the judgment because, while Stein and McGarr styled their motion as one to amend the judgment, it "was effectively a petition to correct the Arbitration Award because it sought a change to a 'matter of form'" and the 100-day deadline for filing such a petition had passed long before the motion was filed.  The argument, however, misapprehends what constitutes a correctable defect in the form of an arbitration award.

---

[9]    During the arbitration, Kiloh did not contend the MTA was invalid in any respect, including its provisions for the composition of HP Holistic's board (making Stein, McGarr, and Kiloh directors).  Relying on the MTA, the arbitrator found Stein and McGarr were entitled to be directors of HP Patients from that entity's inception because the company was HP Holistic's corporate successor.

A petition to correct an arbitration award may lie where "[t]he award is imperfect in a matter of form, not affecting the merits of the controversy." (§ 1286.6, subd. (c).) Correctable defects in "form" involve "*nonsubstantive* matters." (*Century City Medical Plaza v. Sperling, Isaacs & Eisenberg* (2001) 86 Cal.App.4th 865, 877 (*Century City Medical Plaza*).) Such matters include omissions of the "exact dollar amount for the award of fees and costs," omitted "property descriptions," and "damage amounts itemized but not totaled." (*Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1105-1106; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2021) ¶ 5:504, p. 5-567; see also *Century City Medical Plaza, supra*, 86 Cal.App.4th at 877 [describing correctable defects in the form of an award as including "evident miscalculation of figures or evident mistake in a description"].)

A petition to correct a defect in the form of an arbitration award must be filed within 100 days after a signed copy of the award is served on the parties. (§ 1288.) Section 1288's 100-day deadline "operates in the same manner as the deadline for filing an appeal, and the court loses jurisdiction to vacate [or correct] the award if the petition is not timely served and filed. Once jurisdiction is lost, it cannot be retroactively reinstated." (*Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1203.)

The provisions of the amended judgment directing Kiloh to appoint Stein and McGarr to HP Patients' board and provide them with access to corporate books and records by a certain date are not corrections to an arbitral award of the type contemplated by section 1286.6. Although the initial judgment might have been sufficient for a party that was not intent on splitting hairs to resist it, the amendments helped clarify the substantive terms

16

of the court's initial judgment confirming the arbitral award.  In so doing, the amendments did not change the arbitrator's resolution of the parties' controversy (the amendments did not alter the arbitrator's findings that Stein and McGarr were entitled to seats on HP Patients' board and access to the corporation's records) and the amendments were appropriately made pursuant to section 187.  (See generally *Carolina Casualty Ins. Co. v. L.M. Ross Law Group LLP* (2012) 212 Cal.App.4th 1181, 1189 [section 187 permits amendment of a judgment when "'the equities overwhelmingly favor' the amendment and it is necessary to prevent an injustice"]; *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 508 [under section 187, "'"a court may amend its judgment at any time"'"].)

    *C.    The Argument Concerning the Possible Legal Effects of Stein and McGarr's Appointment Is Unavailing*

Kiloh argues the trial court abused its discretion under section 187 because the amended judgment would "wreak havoc" on HP Patients by causing it to violate provisions of the Corporations Code governing the election of directors and "numerous" state and local regulations regarding the ownership of licensed cannabis businesses.

The time to raise concerns about how Stein and McGarr's appointment might affect HP Patient's compliance with its bylaws, as well as with applicable rules and regulations, has passed.  If, on one hand, Kiloh did not raise the compliance issue during the arbitration, he forfeited the issue.  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 30 (*Moncharsh*); *Zazueta v. County of San Benito* (1995) 38 Cal.App.4th 106, 111.)  If, on the other hand, Kiloh did raise with the arbitrator the effects of Stein

17

and McGarr's belated appointment on the corporation's compliance with various rules and regulations and the arbitrator did not rule on the matter, that would have been at least arguable grounds to vacate the award—but Kiloh never moved to vacate it.  (§ 1283.4 [arbitrators are required to decide all questions submitted that are "necessary" to determine the controversy].)  That, again, forfeits the issue.  (*Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 659 ["A party who fails to timely file a petition to vacate under section 1286 may not thereafter attack that award by other means on grounds which would have supported an order to vacate"]; see also *Moncharsh, supra,* 3 Cal.4th at 10.)

DISPOSITION

The judgment is affirmed.  Stein and McGarr are awarded costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



RUBIN, P. J.



KIM, J.